In the Matter of EVERGREEN MEMO-
RIAL PARK ASSOCIATION,
Bankrupt.
Blanche Smith Peters, Appellant.
No. 13922.

United States Court of Appeals
Third Circuit.

Argued May 10, 1962.

Decided Sept. 28, 1962.

F. C. Fiechter, Jr., Philadelphia, Pa.
(Matthew W. Bullock, Jr., Philadelphia,
Pa., on the brief), for appellant.

Joseph J. Cohen, Philadelphia, Pa., for
appellee.

Before McLAUGHLIN, STALEY and
GANEY, Circuit Judges.

GANEY, Circuit Judge.

This is an appeal from the order of the District Court denying the objections of a judgment creditor to the order of the Referee awarding $7,421.56, the amount remaining after other lien creditors were paid in full, to Caroline Warga according to his determination of priority of liens on the proceeds of a sale of 99.20 acres of cemetery land in Bucks County, Pennsylvania. The appellant, Blanche Smith Peters, claims here, as she did in the court below, that her judgment lien, although later in time, had priority over the mortgage lien held by Warga on 63.95 of the 99.20 acres, and therefore she should receive all or part of the $7,-421.56 representing the amount remaining after the now undisputed prior claims have been paid.

For a proper understanding of the problem involved, a chronological exposition of the pertinent events should be set forth. Prior to March 14, 1957, the debtor, Evergreen Memorial Park Association ("Evergreen"), a cemetery company, was the owner of 63.95 acres of land ("Plot A") used as burial lots in Bucks County, Pennsylvania. The encumbrances against Plot A were: (1) a first mortgage, dated February 23, 1956, and recorded six days later, in the amount of $35,000.00 in favor of Penn Garment Manufacturing Co., Inc., and subsequently assigned to one Joseph Konick, and (2) five judgments totaling $10,000.00 entered on February 18, 1957, in favor of E. A. Rosenberger.[1] Evergreen also held 3 acres of land ("Plot C") in trust for the Franklin Cemetery Company.

On March 14, 1957, Evergreen gave a second mortgage on Plot A in favor of Konick for $35,000.00. This mortgage was recorded on March 29, 1957. Also on March 14, Evergreen acquired 27 acres ("Plot B") adjoining Plot A and, on the same day, conveyed it to Konick by deed regular and absolute in form.

The deed was recorded on March 29, 1957. However, contemporaneous with the execution of the deed, Evergreen and Konick entered into a written agreement dated March 14, 1957. The agreement stated that Plot B was "granted" to Konick as security for the repayment of the balance of the loan previously made by Penn Garment Manufacturing Co., Inc., and the one for $35,000.00 made by Konick that day, and also for the proper operation of the cemetery land. The agreement further provided that in the event of default on Evergreen's part, the agreement was to become null and void within 30 days after such default and Konick's title to the real estate was to become absolute "and no equity of redemption or rights of any kind in said real estate, shall be in or belong to Ever-. green, its successors or assigns." The agreement was signed and sealed by Evergreen and Konick, acknowledged and delivered by Konick to Evergreen, but it was never recorded.

On July 1, 1958, Evergreen gave a third mortgage on Plot A in favor of Warga for $22,500.00. The mortgage deed was recorded on July 10, 1958; it did not contain any "after acquired property" clause.

On September 2, 1958, a judgment against Evergreen for $11,556.00 was recorded in favor of appellant Peters in the Court of Common Pleas of Bucks County.

Evergreen defaulted under the first and second mortgage. The Referee found that " * * * the first and second mortgagee [Konick] did * * * prepare to foreclose under both mortgages and notified Evergreen of such intent. However, under date of November 5th, 1958, at the suit in equity of the Pennsylvania Securities Commission against Evergreen * * * the Court of Common Pleas No. 1 of Philadelphia did enter an order appointing a receiver of Evergreen and enjoining the institution of any ac-

---

1. These judgments were later assigned to the Huntingdon Valley Development Co. and by an agreement of March 29, 1957, they were made junior to the lien of the second mortgage held by Joseph Konick on Plot A.

tions or suits against Evergreen or interfering with its assets. As result thereof, the first and second mortgagee was unable to enforce its rights."

On February 10, 1959, an involuntary petition in bankruptcy was filed against Evergreen, and on March 19, 1959, it was adjudicated a bankrupt. Immediately prior to bankruptcy, Evergreen owed the following amounts, the liability for which were liens on its real estate: (1) $1,349.80 for taxes owed the United States, (2) $940.53 for taxes owed the Commonwealth of Pennsylvania, (3) $60,774.49 as the balance due on the first and second mortgages in favor of Konick, (4) $4,100.00 on the Rosenberger judgments, (5) $22,500.00 as the balance due on the third mortgage in favor of Warga, and (6) $11,556.00 on the judgment in favor of Peters.

On September 30, 1959, the Referee ordered Evergreen to accept a transfer of 5.25 acres of land ("Plot D") from the King David Cemetery, Inc.

On April 21, 1960, one Joseph J. Cohen offered to purchase the assets of the bankrupt estate free of all claims and liens for $100,000.00. The offer was for 99.20 acres of land, which included Plots A, B, C and D. On May 12, 1960, at a meeting before the Referee, the trustee proposed that $80,000.00 of the Cohen offer be allocated to real estate and $20,000.00 to the remaining assets. The creditors made no objection to this proposal.

On August 23, 1960, Konick delivered a deed for Plot B to the trustee in consideration for the promise that he would receive $60,774.49, the balance due on his mortgages, from the sale of the land. Thereafter the trustee transferred the 99.20 acres and the remaining assets of the bankrupt's estate to Rosedale Memorial Park, Inc., the nominee of Cohen. The trustee received $74,586.38 as the

net proceeds for the real estate after a deduction for local taxes and settlement expenses, and $20,000.00 for the remaining assets.

On June 23, 1961, the Referee filed his order for distribution. The administration expenses consumed the $20,000.00 allocated to personalty. As corrected by the District Court, the amounts ordered distributed to the lien holders out of the fund of $74,586.38 were as follows:

| | | |
|---|---|---|
| 1. | Director of Internal Revenue | $ 1,349.80 |
| 2. | Commonwealth of Pennsylvania | 940.53 [2] |
| 3. | Joseph Konick | 60,774.49 |
| 4. | Assignee of the Rosenberger Judgments | 4,100.00 |
| | Total | $67,164.82 |

This left a balance of $7,421.56 which the Referee ordered distributed to Warga, the holder of the third mortgage on Plot A. Peters, who, like the general creditors, got nothing, objected to Warga receiving the $7,421.56. She did not object to the payments to the other lien holders.

■ A defaulting mortgagor of land in Pennsylvania is not without any protection. He has the right to redeem the mortgaged property upon payment of the mortgage debt prior to the fall of the hammer at a sheriff's sale of the property. He also has the right to receive from the proceeds of the sale of the mortgaged land the amount, if any, in excess of the mortgage debt. Pennsylvania Company etc. v. Broad Street Hospital, 354 Pa. 123, 126, 47 A.2d 281 (1946). Also see 3 Powell on Real Estate § 467.[3] Contrary to Peters' assertion, we are not interested in the right to redeem the property. The trustee nor anyone else made any attempt to re-

2. This item had been disallowed by the Referee.

3. In Staunton Military Academy v. Dockery, 244 N.C. 427, 94 S.E.2d 354 (N.C. 1956), a mortgagor's judgment creditor was permitted to recover from the trustee who foreclosed on the property and distributed surplus in disregard of the claim by the judgment creditor.

deem Plot B pursuant to General Order 28.[4] But we are concerned with the right of the mortgagor, or one standing in his stead, to receive the excess amount of money from the sale of the mortgaged land after the mortgage debt has been deducted or paid.

██ Warga, the holder of the third mortgage on Plot A, concedes that the written agreement of March 14, 1957, between Evergreen and Konick was a defeasance to the deed of the same date purporting to transfer title of Plot B to Konick. But she claims that it should not be treated as a mortgage because it was not recorded. By the very wording of the Act of June 8, 1881, P.L. 84, as amended by the Act of April 23, 1909, P.L. 137, § 1, 21 P.S. § 951,[5] the defeasance agreement was a mortgage. That the defeasance was unrecorded did not prevent it from becoming a mortgage since there were no subsequent grantees or mortgagees of Plot B. Rhodes v. Good, 271 Pa. 117, 121, 114 A. 494 (1921); Fassburg v. Commonwealth Trust Co., 74 Pittsb.Leg.J. 734 (1926). The cases cited to the contrary by Warga involved transactions that took place prior to the effective date of the amending Act of 1909. Therefore, until bankruptcy ensued, Evergreen had all the rights and liabilities of a mortgagor under Pennsylvania law regarding Plot B. Hence, on March 14, 1957, legal title to Plot B remained in Evergreen. The fact that it defaulted under the terms of the defeasance agreement did not cause that title to pass to Konick, or cut off its rights as a mortgagor. Johnston v. Gray, 16 Serg. & R. 361 (Pa.1827); Rankin v. Mortimere, 7 Watts 372, 375

(Pa.1838). Also see King's Estate, 215 Pa. 59, 61, 64 A. 324 (1906). Since Evergreen possessed the right to receive the amount of the purchase price of Plot B above the mortgage debt in the event the property was sold at a foreclosure sale, the lien of Evergreen's judgment creditor covered that right. Kinports v. Boynton, 120 Pa. 306, 319, 14 A. 135 (1888); Parnes v. Hibbs, 191 Pa.Super. 56, 58, 155 A.2d 426 (1959). The trustee in bankruptcy's title to the real estate was subject to that lien.

██ The Rosenberger judgments were not liens on Plot B for in Pennsylvania a judgment is not a lien on realty to which the debtor did not have title at the time the judgment was entered. General Casmir Pulaski B. & L. Ass'n v. Provident Trust Co. of Philadelphia, 338 Pa. 198, 201, 12 A.2d 336 (1940); 20 P.L.E. Judgment § 369. The holder of the Rosenberger judgments must therefore be required to look to the proceeds from Plot A in order to receive payment.

Warga's third mortgage on Plot A was not a lien on Plot B. 24 P.L.E. Mortgages § 101. If Warga is to share in the proceeds from the real estate, such sharing must be by virtue of any excess in the amount from the sale of Plot A after prior lien holders on that plot of land have been paid in full.

Now the solution to our problem as to how the $7,421.56 is to be distributed would be simplified if it were not for the fact that Plot B was also security for the payment of the first and second mortgages on Plot A. Of course those mortgage debts would have to be paid in full before Peters would be entitled

---

4. See 4 Colliers on Bankruptcy, §§ 70.16, 70.991.

5. This Act provides:
   "No defeasance to any deed for real estate, regular and absolute upon its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is in writing, signed and delivered by the grantee in the deed to the grantor; and, in so far as it may effect any subsequent grantee or mortgagee of such real estate, for value, unless it is also acknowledged and recorded in the office for the recording of deeds and mortgages in the county wherein the said real estate is situated, before the execution and delivery of such subsequent grant or mortgage; and such defeasances shall be recorded and indexed as mortgages by the recorder."

to receive payment from the proceeds of the sale of Plot B.[6]

One way of solving the problem would be to apply the entire fund representing the proceeds from Plot B to the payment of the amounts owed to the national and state governments, and the balance to the payment of Konick's first and second mortgage on Plot A, and if that were not sufficient to pay them off in full, to take the amount necessary from the fund representing the proceeds from Plot A, and from the balance pay the holders of the Rosenberger judgments $4,100.00, and distribute the remainder of $7,421.56 to Warga, the holder of the third mortgage. This mode of distribution would be in effect the same as that made by the Referee, and would be unfair to Peters.

Another way would be to start with the fund representing the sale of Plot A and apply it to the payment of the amounts owed to the national and state governments, and then to the amount owed on the first mortgage, to the payment of $4,100.00, and the remainder, if any, to the second mortgage, in that order. If the remainder would not be sufficient to pay the second mortgage in full, then the proceeds from Plot B would have to be used for that purpose and the remainder of $7,421.56 paid to Peters. This mode of payment would be unfair to Warga.

Since Bankruptcy Courts apply equitable principles in the absence of a statutory mandate to the contrary, neither of the above modes of payment should be followed. Instead, the fund from each plot should be charged with a portion of the expenses of the real es-

tate, and the amount of the liens, excluding those of the Warga mortgage and the judgments, binding the property in the proportion that the value of that particular plot bears to $80,000.00, and the remainder, after charging the fund from Plot A with $4,100.00, paid over to Warga and Peters respectively. This method of payment will require the ascertaining of the value of each plot, taking $80,000.00 as being the combined value of both and their total area as being 100% of the land conveyed for that price. The amount of the share of the $7,421.56 that Peters and Warga will receive will depend on the value of each plot. For example, if each acre of Plot A and Plot B were of equal value, then Plot A would be worth $56,248.00, or 70.31% of the proceeds, and Plot B would be worth $23,752.00,[7] or 29.69% of the net proceeds. Were this the case then the method of distribution could have been made in the following manner: The value of Plot A would be charged with 70.31% of $7,703.95 (consisting of $5,413.62 for the cost of sale, $1,349.80 claimed by the United States, and $940.-53 by the Commonwealth of Pennsylvania) or $5,416.65. It would also bear $42,730.44 or 70.31% of the first and second mortgage and $4,100.00 or 100% of the Rosenberger judgments. This would leave a remainder of $4,000.91, which would be paid over to Warga. The value of Plot B would be charged with 29.61% of $7,703.95 or $2,287.30. It would also be charged with 29.61% of the value of the first and second mortgage on Plot A, or $18,044.05, and the remainder of $3,420.65 be paid over to Peters.

6. By Pennsylvania Lien Priority Law, June 28, 1951, P.L. 927, § 2, 68 P.S. § 602, the lien of a judgment takes priority over unrecorded mortgages and defeasible deeds in the nature of mortgages. In re Riddlesburg Mining Company, Inc., 224 F.2d 834, 838–839 (C.A.3, 1955). Since Blanche Smith Peters did not object to the $60,774.49 payment to Joseph Konick, apparently on the ground that title to Plot B was recorded in his name and not that of Evergreen, we are treating the defeasance agreement as having been recorded along with the deed.

7. Peters and Warga agree that Plot D (5.25 acres) had no value as far as contributing to the $80,000.00 fund is concerned. Apparently Plot C (3 acres) had little or no value either—for no one claimed a share of the proceeds for the transfer of this plot. For the purposes of this appeal this Court will assume, without so deciding, that no part of the $80,000.00 was attributable to Plot C.

**70**

From the record before it, this Court is unable to determine the proportion Plots A and B contributed to the $80,000.00. Therefore the matter must be sent back to the District Court so that it can instruct the Referee to ascertain the value those plots contributed to the $80,000.00, in the event that Peters and Warga cannot agree as to those values.

Accordingly, that part of the District Court's order denying the objection of Blanche Smith Peters to the ruling of the Referee will be reversed, and the cause will be remanded for further proceedings not inconsistent with this opinion.