### In the Matter of Martin Robert ROMANAC, Bankrupt.
### No. 64–BK–20–C.

United States District Court
W. D. Virginia,
Charlottesville Division.
Oct. 1, 1965.

Richard S. Callaghan, Jr., Taylor, Camblos, Michie & Callaghan, Richard H. Barrick, Wingfield & Barrick, Charlottesville, Va., for petitioners.

Fred S. Landess, Battle, Neal, Harris, Minor & Williams, Charlottesville, Va., for intervenor National Bank & Trust Co.

MICHIE, District Judge.

This case arises from a petition to review an order of the Referee with respect to the proceedings in the bankruptcy of one Martin Robert Romanac.

On March 5, 1964 the petitioner, Allied Supply Company, a Virginia corporation, hereinafter referred to as Allied, filed a memorandum of mechanic's lien in the amount of $2967.07 against a duplex house owned by the bankrupt in the City of Charlottesville. There is no question but that this filing perfected Allied's lien under applicable Virginia law. See Va. Code Ann. §§ 43–4 and 43–7 (repl. vol. 1953). Thereafter on April 24, 1964 the bankrupt, Romanac, filed his voluntary petition in bankruptcy.

On May 13, 1964 the other petitioner, N. G. Runyan, filed his memorandum of mechanic's lien for the amount of $600 against the same duplex property on account of labor and materials furnished to the bankrupt on that property.[1]

During the month of May, 1964, both petitioners filed their proofs of claim in each of which appeared notations to the effect that mechanic's liens had been duly perfected in accordance with Virginia law. Thereafter, these petitioners did nothing further in the state courts, believing that the intervention of bankruptcy proceedings removed the necessity of such further state proceedings to enforce their liens.[2]

In addition to these petitioners there were eight other statutory lienors. Among these were Bryan & Beck, Inc., Frank E. Ware and R. A. Yancey Lumber Co.

On July 24, 1964 Bryan & Beck petitioned the Referee for permission to file

1. The statutory provision of the Bankruptcy Act pertaining to statutory liens such as are involved here is section 67, sub. b and reads in part as follows:

The provisions of section 60 [11 U.S.C. § 96] of this Act to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, * * * created or recognized by the laws * * * of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this Act by or against him. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of the property, they shall in-

stead by perfected by filing notice thereof with the court. 11 U.S.C. § 107, sub. b.

2. Virginia law pertaining to enforcement of mechanic's liens provides that:

No suit to enforce any lien perfected under §§ 43–4, 43–5 and 43–7 to 43–10 shall be brought after six months from the time when the memorandum of lien was recorded or after sixty days from the time the building, structure or railroad was completed or the work thereon otherwise terminated, whichever time shall last occur; *provided, however, that the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the institution of a suit under this section;* and, provided further, that nothing herein shall extend the time within which such lien may be perfected.
Va.Code Ann. § 43–17 (Cum.Supp.1964) (emphasis added)

suit in the state court to preserve their duly perfected lien since they believed that there was some question as to whether or not their lien would be lost if not enforced pursuant to section 43–17 of the Code of Virginia. On July 28th the Referee granted them leave to institute the state court suit and secure service of process. They were enjoined, however, from taking any further action in the suit. The Referee's order further stated that copies were to be mailed to the trustee in bankruptcy, the trustee for the construction loan deed of trust and the attorney for Bryan & Beck. There was no indication that any copy was to be mailed to either of the present petitioners, nor was any received by them.

On September 3, 1964, pursuant to a petition by Frank Ware, the Referee granted him leave to intervene in the pending state action commenced by Bryan & Beck. Again, the order did not direct that copies thereof be sent to either of the present petitioners nor did they actually receive any such copies. A similar order was entered by the Referee in favor of Yancey Lumber Co. on October 1, 1964. However, as before, no copies were directed to be sent to the petitioners nor did they receive any.

On October 30, 1964 the Trustee in Bankruptcy in a letter to the Referee listed the name and amount of lien of each of the mechanic's lienors. The petitioners were included in this list. The Trustee went on to inquire as to whether "Bryan and Beck, Inc. and all other interested mechanic's lienors be permitted to prosecute their suit, with me [the Trustee] joining as a proper party, * * *." There was no copy directed to be sent to the instant petitioners, nor did they receive one.

On November 21, 1964 Bryan & Beck by counsel moved the court to allow them "and other persons similarly situated or claiming a lien on a duplex house and lot * * * formerly belonging to the Bankrupt" to proceed in the state court with their suit of enforcement. A copy of this petition was mailed only to the Trustee in Bankruptcy. On December 10, 1964 the Referee entered an order permitting Bryan & Beck to proceed with their suit since according to the Trustee's letter of October 30th there appeared to be no equity left in the property. In addition, this order specified "that any other person having claim to mechanics' lien against the said real estate or other lien debt secured upon said real estate may fully plead and participate in such mechanics' lien suit for the protection thereof * * *." Again copies of this order were not directed to be furnished to the instant petitioners nor did they receive copies.

Subsequent thereto, the petitioners, Allied and Runyan, accidentally learned of the enforcement proceeding instituted in the Corporation Court of the City of Charlottesville, Virginia and sought to intervene. Permission to implead was denied by that court due to the expiration of the six month period provided for in section 43–17 of the Virginia Code.

Thereafter on January 9, 1965 the petitioners petitioned the Referee to amend, supplement or rescind all of his aforesaid orders. This petition was denied on May 13, 1965 in an opinion in which the Referee reasoned that, while section 67, sub. b of the Bankruptcy Act expressly protects inchoate mechanic's liens, it does so only to the extent that the property upon which the lien is so possessed is liquidated in the bankruptcy proceeding. The Referee concluded that the Trustee is not required to liquidate assets for the benefit of the secured creditors where there is no equity to be realized for the benefit of the general creditors. The Referee further reasoned that, while such a statutory lien would be protected in the bankruptcy proceedings by virtue of section 67, sub. b, it does not follow that the same section will provide further protection for the lien in the state courts.

The Referee in arriving at his decision placed reliance upon In re Willax, 93 F.2d 293 (2d Cir. 1937) which correctly stated that mechanic's liens are creatures of statutory law and that the

law of the state where the real property is located governs the method whereby such liens may be preserved and enforced. However, in Willax the Second Circuit was dealing with a New York statute which provided two alternatives to a suit of enforcement in order to preserve a mechanic's lien. One of these alternatives allowed the obtaining of a court order continuing the lien. The Willax court held, and correctly so in light of the New York statute, that the filing of a proof of claim was not equivalent to an action to enforce the lien since, while the bankruptcy court could enjoin a state court enforcement suit, it could not enjoin a state proceeding to continue the lien as provided for by state law, in lieu of a foreclosure suit, as this latter form of action would not interfere with bankruptcy proceedings. With this state remedy of continuing the lien available, the filing of a proof of claim could not be viewed as an attempt by the creditor to realize upon his security. See In re Long Island Properties, 143 F.2d 349 (2d Cir. 1944) (Explaining Willax, supra, and comparing it with American Coal Burner Co. v. Merritt, 129 F.2d 314 (6th Cir. 1942)).

On the 14th of May, 1965 petitioners entered into an agreement with the National Bank and Trust Co. of Charlottesville, a subordinated construction loan lienor, whereby petitioners would forego their appeal to the Supreme Court of Appeals of Virginia of the decision of the Corporation Court refusing them leave to implead in Bryan & Beck's enforcement suit. This would then release the proceeds of the sale and allow them to be distributed to those parties to the state proceeding. In return, the bank agreed that if the petitioners prevailed in their petition for review to this court it would pay the amount of the petitioners' liens to them out of the proceeds received by the bank as a subordinate lienor.

In reading section 43–17 of the Virginia Code and particularly that portion italicized in footnote 2, supra, in light of the decision in American Coal Burner, supra, I feel that there is considerable

merit in petitioner's reliance on the bankruptcy proceeding and their filing of proofs of claim as evidence of sufficient enforcement petition.

Bankruptcy proceedings, of course, are not primarily directed to aiding secured creditors, for they are already under such mantle of protection as their security affords. If their lien rights are valid and enforceable when the bankruptcy petition is filed, it is not necessary that they, thereafter, comply with local requirements for filing extensions, renewals, and the like, in order to safeguard their rights. Moreover, the lien of a judgment, valid as of such time, is not lost by subsequent failure to have execution issued thereon.

5A Remington, Bankruptcy, § 2522.12 (5th ed. 1953) (footnote omitted).

However, since there has been no appeal from the decision of the Corporation Court excluding the petitioners from intervening in the Bryan & Beck proceeding, that decision has become final and is binding on me regardless of whether I feel it was correct or not. Virginia Iron, Coal & Coke Co. v. Olcott, 197 F. 730 (4th Cir. 1912).

Under the well-established rule of this circuit as well as other circuits, a court of original jurisdiction has only the power to determine the priorities of claims and adjust equities, but it does not possess the power to determine the validity or amount of liens that may be established in the state court. To rule that the court had this power would be, in effect, to hold that it had the power to review the action of the state court as respects that question. Id. at 736.

While this forecloses the question of whether the state court was in error, it does not decide the issue as to whether there was a duty on the Referee to rescind his order of December 10, 1964 so as to bring the property or the proceeds back into the bankruptcy

court. However, no such obligation could be found to have existed, unless it be also found that there was a further duty on the bankruptcy court and its officers to have given notice to the petitioners that the other mechanics' lienors had applied for and were being given permission to bring suit in the state court to enforce their liens and that the Trustee was recommending to the Referee that the duplex property be abandoned to the creditors having security thereon.

This raises, in essence, the issue of the bankruptcy court's duty towards mechanics' lienors.

The Referee concluded that, while section 67, sub. b of the Bankruptcy Act protects mechanic's liens on property liquidated in bankruptcy proceedings, there is no duty on the Referee to liquidate assets for secured creditors where there is no equity to be realized for the benefit of the general creditors. Furthermore, the Referee concluded that he could disclaim any interest in such property and let the secured creditors fight over it in the state courts.

This may well be true. But the question here is whether in deciding to disclaim the property the Referee is under a duty to protect mechanic's lienors who have chosen to enforce their liens in bankruptcy by filing timely proofs of claim based upon what I conclude to be a reasonable reliance that such action would constitute a sufficient enforcement. The date of disclaimer here was December 10, 1964 and at that time the six month period of enforcement under state law (Va.Code § 43-17) had expired as to the instant petitioners. The Referee was capable of determining that fact from the official file of the case at the time he signed the order of disclaimer. The question then becomes whether he was under a duty not to disclaim the property knowing that the effect of doing so would be to deny Allied and Runyan the enforcement of their liens.

■ In determining what duty, if any, was owed to these lienors reference must first be made to the provisions of the Bankruptcy Act itself, for only where the Act is silent will equitable principles rather than those of law control. 1. Remington, Bankruptcy, § 22 (5th ed. 1950). To ignore the plain language of the Act and apply equitable principles would be to destroy the meaning of the Act. Imperial Assurance Co. v. Livingston, 49 F.2d 745, 74 A.L.R. 1336 (8th Cir. 1931); 2 Remington, Bankruptcy, § 1117 (Rev. ed. 1956).

Section 1 of the Act defines a creditor as anyone who owns a debt, demand or a claim provable in bankruptcy. The same section defines a secured creditor as a creditor having security for his debt upon property of the bankrupt. [11 U.S.C. § 1.]

In setting forth the duties of the Referees Section 39 [11 U.S.C. § 67] requires that they "shall (1) give notice to creditors and other parties in interest, as provided in this Act; * * * (4) furnish or cause to be furnished such information concerning proceedings before them as may be requested by parties in interest; * * *."

Section 58, sub. a [11 U.S.C. § 94, sub. a] deals with notice to creditors and provides that notice shall be given concerning "(4) all proposed sales of property." It would appear that section 58, sub. a (4) of the Act applies only to sales conducted by officers of the bankruptcy court. See 6 Remington, supra, § 2539 at p. 23; In re Weeks, 4 F.Supp. 558, 560 (N.D.Tex. 1933), aff'd, West Texas Const. Co. v. Nelson, 77 F.2d 754 (5th Cir. 1935). However, this case does support the proposition that a secured creditor who has not filed a proof of claim in bankruptcy is nevertheless entitled to notice of a proposed sale under § 58, sub. a(4) so as to enable him to protect his lien.

■ Even if section 58, sub. a(4) does not apply in cases of abandonment of property to the secured creditors, does that mean that equitable principles will not be applicable? While it is true that a trustee in bankruptcy is not ordinarily a trustee for fully secured lien creditors,

In re San Joaquin Valley Packing Co., 295 F. 311 (9th Cir.), cert. denied, 265 U.S. 583, 44 S.Ct. 459, 68 L.Ed. 1191 (1924), it has been held that, nevertheless, as custodian of all the property of the bankrupt, he does have duties towards such lienholders. In re Etherton, 88 F. Supp. 874 (S.D.Cal. 1950).

> Whenever the rights of a particular individual will be or are likely to be adversely affected by the granting of a motion or petition, he should be given notice of the application, as matter of due process and regular procedure, and a fair opportunity to be heard. This is as a matter of general principle and without regard to whether any provision of the Bankruptcy Act or the General Orders in Bankruptcy so requires.

2 Remington, Bankruptcy, § 692.75 (Rev. ed. 1956).

Here the rights of the petitioners may certainly be said to have been adversely affected by the silence of the bankruptcy court and its officers. As a result, I find that the petitioners should have been furnished notice of the prior orders of the Referee in addition to the Trustee's recommendation of October 30th that the property be disclaimed. In this connection it is important to note that had the petitioners received notice of the Referee's prior order or of the Trustee's recommendation of disclaimer they would, at any of those times, have been within the six month period and could have successfully crossed the street and intervened in the state court proceedings. Cf. Richmond Engr. & Mfgr. Corp. v. Loth, 135 Va. 110, 115 S.E. 774 (1923); Monk v. Exposition Deepwater Pier Corp., 111 Va. 121, 68 S.E. 280 (1910). Counsel for National Bank and Trust Company in opposing this petition for review argues that the instant petitioners had the same opportunity as the successful lienors to enforce their liens and that this court should therefore refrain from coming to their aid. Counsel, however, fails to appreciate the fact that the Referee having actual knowledge in the form of timely proofs of claim of petitioners' liens dealt with the secured property without giving notice to the petitioners or consulting with them about its disposition. See In re Rose, 193 F. 815 (E.D.Ky. 1911); McKay v. Hamill, 185 F. 11 (3d Cir. 1911). It is true that for the Trustee to sell this property in which there existed no equity would have been a burden upon the estate. However, it would not have burdened the estate nor have inconvenienced the Trustee to have apprised the petitioners who had submitted to the jurisdiction of the court by filing their proofs of claim that since no equity existed in the property he was recommending that it be disclaimed. As I stated above, at the time of the Trustee's recommendation of October 30th the enforcement period had *not* expired as to these petitioners. This would also have been true had the petitioners received notice of the orders prior to that date allowing Bryan & Beck, Frank Ware and Yancey Lumber Co. to institute state enforcement proceedings. In summary, the petitioners were never given notice or consulted as to official acts taken by the bankruptcy court in connection with property in the possession of the bankruptcy court and upon which they had valid liens.

In holding that the bankruptcy court had an affirmative duty towards these petitioners, I am in agreement with Judge Yankwich who reached the same conclusion in a case presenting nearly the same facts as are present here. In re Etherton, 88 F.Supp. 874 (S.D.Cal. 1950). The Referee there had held the mechanic's liens void since the lienor, Bradshaw, had not instituted timely enforcement proceedings in accord with California law. He had failed to distinguish In re Willax, supra, since, unlike New York law, California law (which was similar to section 43–17 of the Virginia Code) provided no method for continuing a mechanic's lien. As in the instant case, the Etherton lienor had perfected his lien within the California statutory period but had not enforced it within that time except inasmuch as he had filed

his timely proof of claim in bankruptcy. Although the crucial issue there was whether the lienor had properly brought to the attention of the court the fact that he was claiming a lien, the rationale of the case applies with equal force here. First, Judge Yankwich followed American Coal Burner, supra, and a number of other authorities in holding that state enforcement proceedings were unnecessary since the rights of the parties and the validity of their liens were fixed as of the date of bankruptcy petition, *e. g.,* Gardner v. State of New Jersey, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947).

> The Referee was required to consider the filing of the claim as an application for whatever relief the claimant was entitled to,—whether it be permission to sue [for enforcement] or allowance of petition for adjudication of the claim. The filing of the claim was just as effective, to require the referee to pass on it, as any formal petition.

In re Etherton, supra, 88 F.Supp. at 879. In speaking of the duty of the court, Judge Yankwich said:

> The court in bankruptcy could allow the claimant to proceed with foreclosure. He did not apply for such permission. Instead, he chose the alternative of bringing the lien to the attention of the bankruptcy court by asserting it as a secured claim. *The bankruptcy court being a court of equity, it was its duty, if the claimant had chosen the wrong remedy, to tell him, "This is the wrong way to proceed. You had better apply for permission to sue."*

Id. at 878. Inasmuch as bankruptcy is an equitable proceeding, I find that this duty not only existed after the filing of the proofs of claim but also at the time of the Trustee's recommendation of disclaimer on October 30th as well as at the time of the issuance of the prior orders relating to commencement of state enforcement proceedings.

Allied and Runyan could have chosen to sue for enforcement in the state court but such a procedure could be quickly enjoined by the bankruptcy court. Therefore, they chose the alternative of filing their proofs of claim and subjecting themselves to the jurisdiction of this court since that would also encompass any deficiency claim. They did all that would have been necessary had the property been liquidated and the proceeds distributed in bankruptcy. American Coal Burner Co. v. Merritt, 129 F.2d 314 (6th Cir. 1942). To say that they must now lose because the property, having no equity left therein for general creditors, was disclaimed is to reach an inequitable result in light of the fact that having submitted to, and relied upon, the bankruptcy court this court failed to give the petitioners notice of any intent to disclaim or of the fact that other similarly situated lienors were granted permission to file state court suits and obtain service of process to enforce their liens. 2 Remington, Bankruptcy, § 692.-75 (Rev. ed. 1956).

Having worked an inequity by failing to give notice to the petitioners, it became the duty of the bankruptcy court as a court of equity to correct it upon being apprised of such by the petition of January 9, 1965. Cf. Denton v. Gurnett & Co., 69 F.2d 750 (1st Cir. 1934); 1 Remington, supra, § 22. Failure to do so was error and accordingly the Referee's order of May 13, 1965 is reversed and judgment on this petition for review will be entered accordingly for the petitioners, Allied and Runyan.