**NATIONAL BANK & TRUST COMPANY, Appellant,**

v.

**ALLIED SUPPLY COMPANY and N. G. Runyan, Appellees.**

**In the matter of Martin Robert ROMANAC, Bankrupt.**

**No. 10430.**

United States Court of Appeals Fourth Circuit.

Argued June 3, 1966.

Decided Nov. 7, 1967.

Fred S. Landess, Charlottesville, Va. (Battle, Neal, Harris, Minor & Williams, Charlottesville, Va., on brief), for appellant.

Richard H. Barrick, Charlottesville, Va. (Wingfield, Barrick & St. John, Charlottesville, Va., on brief), for appellee, N. G. Runyan.

Richard S. Callaghan, Jr., Charlottesville, Va. (Taylor, Camblos, Michie & Callaghan, Charlottesville, Va., on brief), for appellee, Allied Supply Co.

Before SOBELOFF and BOREMAN, Circuit Judges, and HEMPHILL, District Judge.

BOREMAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Western District of Virginia reversing

---

12. In this kind of case, it is desirable to include in the record the complete set of instructions to the commission.

an order of a Referee in Bankruptcy. The District Court held that the referee had an equitable duty to give to lienholders notice of any action taken by the referee which affected their perfected liens on an asset of the bankrupt estate. We affirm.

Martin Romanac, the bankrupt, began construction of a duplex dwelling on a lot in Charlottesville, Virginia. Allied Supply Company (hereafter Allied) had supplied building materials to Romanac for use in the construction job. On March 5, 1964, Allied filed a memorandum of mechanic's lien in the Corporation Court for Charlottesville for an unpaid claim in the amount of $2,967.07. On May 13, 1964, N. G. Runyan, a subcontractor on the same job, filed his memorandum of mechanic's lien in the Corporation Court for $600.00. In addition to Allied and Runyan, eight others filed mechanics' liens, including Bryan & Beck, Inc., Frank E. Ware and R. A. Yancey Lumber Co.

On April 24, 1964, Romanac filed his voluntary petition in bankruptcy. Allied and Runyan subsequently filed proof of claim in the bankruptcy proceedings, asserting perfected mechanics' liens, but took no further action on their claims. At the first meeting of creditors a Trustee in Bankruptcy was appointed. The trustee gave the referee a complete list of the mechanic's lienholders, including Allied and Runyan.

On July 24, 1964, Bryan & Beck, Inc., petitioned the referee for permission to file suit in the state court to preserve its perfected mechanic's lien. The referee granted permission to institute suit and to obtain service of process but to take no further action. In September and October 1964 the referee entered similar orders granting Frank E. Ware and the Yancey Lumber Co. permission to intervene in the state court suit. In each instance copies of the referee's order were sent to counsel for the petitioning party, the bankrupt, and the trustee, but not to other lienholders.

During this time the trustee was proceeding with the liquidation of the bankrupt's estate under of the court. On August 24, 1964, the trustee reported that the liquidation of most of the assets had been accomplished and that it did not appear there was any equity for common creditors in the duplex, the subject of the mechanics' liens. However, before making a formal disclaimer of this property the trustee reported that he would check further into the validity of the mechanics' liens.

On October 30, 1964, the trustee reported that the liens on the property amounted to $32,543.54, that the cost of finishing the duplex would be $3,500.00, and that the property upon completion would have a market value of no more than $29,500.00. For these reasons the trustee concluded that there would be no equity in the property for the bankrupt's estate and recommended that the lienholders be permitted to sue in the state court to realize on their liens. The trustee also sought authority to intervene in the state court in order to recover any possible excess.

On November 21, 1964, Bryan & Beck, Inc., petitioned the referee for permission for it and others similarly situated to proceed in the state court. On December 10, 1964, the referee entered an order granting such permission. The trustee was given permission to intervene and the order also permitted other persons possessing mechanics' liens to intervene and proceed in the suit for protection of their liens. Copies of this order were sent only to counsel for Bryan & Beck, Inc., the bankrupt, and the trustee. No notice was given to Allied, Runyan, or the other lienholders.

Bryan & Beck, Inc., and others proceeded with the suit in the state court. When Allied and Runyan learned of the suit they sought permission to intervene. However, the state court refused them permission to intervene because the six-month period in which to sue to enforce their liens had expired. Section 43–17 of the Virginia Code (1966 Supp.).

Failing in the state court, Allied and Runyan then petitioned the referee to amend, supplement or rescind his order

of December 10, 1964. This petition was denied by opinion and order of May 13, 1965. The referee was of the opinion that while liens are protected if they are on property liquidated in the bankruptcy proceeding, the trustee is not required to liquidate assets for the benefit of secured creditors where there is no equity for general creditors; the statutory protection afforded liens in bankruptcy does not provide protection in the state courts.

While the referee was considering the petitions of Allied and Runyan, the state court sold the duplex at a public auction at which National Bank & Trust Company, holder of a lien secured by a deed of trust against the property, was the highest bidder. On May 21, 1965, Allied and Runyan petitioned the District Court to review the referee's order. That court reversed the referee's decision, holding that the bankruptcy court and its officers had an equitable duty to notify Allied and Runyan of the referee's order. National Bank & Trust Company was ordered to pay Allied and Runyan the amount of their liens. In re Romanac, 245 F.Supp. 882 (W.D.Va.1965).

National Bank & Trust Company appeals, arguing that a lien creditor in bankruptcy is not entitled to notice of the petitions of other secured creditors for permission to institute suit in the state court or of an order of abandonment by the referee or an abandonment by the trustee; and that even if the referee or trustee had such a duty of notification the proper remedy is against them and not against the bank.

The Virginia statute which the state court held precluded Allied and Runyan from intervening provides:

"No suit to enforce any lien perfected under §§ 43–4, 43–5 and 43–7 to 43–10 shall be brought after six months from the time when the memorandum of lien was recorded or after sixty days from the time the building, structure or railroad was completed or the work thereon otherwise terminated, whichever time shall last occur; provided, however, that the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the institution of a suit under this section; and, provided further, that nothing herein shall extend the time within which such lien may be perfected." § 43–17 Code of Virginia (1966 Supp.).

Allied and Runyan had perfected their liens pursuant to applicable state law and had then filed their proofs of claim in the bankruptcy proceeding. They could not enforce their liens in the state court until the referee gave them permission to do so. However, when the referee decided to permit the use of the state court for enforcement of liens on a particular asset of the bankrupt and to permit the lienholders to sue therein Allied and Runyan were not informed. When the order of December 10, 1964, was issued these lien creditors, Allied and Runyan, were still under the impression that they could not enforce their liens in the state court.

It is stated in 5A Remington on Bankruptcy, § 2522.12 (5th ed. 1953), as follows:

"Bankruptcy proceedings, of course, are not primarily directed to aiding secured creditors, for they are already under such mantle of protection as their security affords. If their lien rights are valid and enforceable when the bankruptcy petition is filed, it is not necessary that they, thereafter, comply with local requirements for filing extensions, renewals, and the like, in order to safeguard their rights."

In American Coal Burner Co. v. Merritt, 129 F.2d 314 (6 Cir. 1942), a lienholder which had perfected its lien prior to an involuntary petition in bankruptcy was denied its claim by the bankruptcy court because it had failed to enforce its lien within the local statutory period of twelve months. The appellate court reversed, holding:

"While the mechanic's lien is the creature of state law and must be perfected and preserved in the manner prescribed by state law, we think that

appellant took all the action that was necessary to preserve its lien. When bankruptcy intervened, the lien was valid and in full force, and the filing of the claim as a secured claim in the bankruptcy proceedings had the effect of an action to enforce the lien." 129 F.2d at 316 (citations omitted).

■ In the instant case there was no challenge to the validity of the liens of Allied and Runyan. The only real issue was whether they had a right to notice of action in the bankruptcy proceeding which substantially affected their rights. A bankruptcy court is a court of equity and is guided by equitable doctrines and principles except insofar as they are inconsistent with the Act. Securities and Exchange Commission v. United States Realty and Improvement Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); Braddy v. Randolph, 352 F.2d 80 (4 Cir. 1965).

True, there is no *statutory* requirement that the bankruptcy court give notice to secured creditors of the fact that permission has been granted to some lien creditors to enforce their claims in the state courts. See section 58(a) of the Bankruptcy Act, 11 U.S.C. § 94(a). However, it would seem that general equitable principles would require such action in circumstances such as those before us.

Remington states that "[w]henever the rights of a particular individual will be or are likely to be adversely affected by the granting of a motion or petition, he should be given notice of the application, as a matter of due process and regular procedure, and a fair opportunity to be heard." 2 Remington on Bankruptcy, § 692.75 (Rev.ed.1956).

In re Etherton, 88 F.Supp. 874 (S.D. Cal.1950), lends some support to the proposition that a bankruptcy court has the equitable duty to notify interested parties of matters affecting their substantial rights. There, a creditor who had recorded three mechanic's liens prior to the petition in bankruptcy was denied recovery on them by the Referee in Bankruptcy because the lien creditor had not instituted proceedings to enforce them within the time specified by California law. The District Court observed that the lienholder could have been permitted in bankruptcy to proceed with foreclosure. However, he had not applied for such permission, choosing rather to assert his lien in the bankruptcy court as a secured claim. The court held, "The bankruptcy court being a court of equity, it was its duty, if the claimant *had chosen the wrong remedy*, to tell him, 'This is the wrong way to proceed. You had better apply for *permission to sue.*'" 88 F.Supp. at 878.

[2, 3] Allied and Runyan had done all that appeared to be necessary to protect their rights and were not lax in any respect. When they learned of the suit in the state court they promptly sought permission to intervene. Under these circumstances we hold that the referee had the equitable duty to give them notice of his action which vitally affected their rights. National Bank & Trust Company contends that even if it be found that the officers of the bankruptcy court had a duty to notify Allied and Runyan of action affecting their security their remedy should be against these persons and not against the bank, an innocent party. No cases are cited to support this contention and we do not find it persuasive under these circumstances. It clearly appears that both the trustee and the referee were acting in good faith and did not thereby incur any personal liability. Furthermore, on May 14, 1965, all parties to this appeal executed a stipulation agreement which provided for a disposition of the funds realized by the sale pending a decision by the District Court. It was stipulated that the disposition of the funds would not prejudice Allied's and Runyan's rights to recover from National Bank & Trust Company any amount that the District Court held to be owing to them. In view of this stipulation we find the argument that the trustee and referee be held liable to be lacking in merit.

Affirmed.