In the Matter of IMPERIAL HEIGHTS APARTMENTS, LTD., Debtor.

Bankruptcy No. 3–80–04065.

United States Bankruptcy Court,
S. D. Ohio, W. D.

March 19, 1982.

Robert N. Farquhar, Dayton, Ohio, for Ohio Suburban Water Co.

Robert W. Werth, Columbus, Ohio, for AFI.

Thomas R. Noland, Dayton, Ohio, for W&F Inv. Co.

Horace W. Baggott, Jr., Dayton, Ohio, for Frederic Gagel.

Herbert Ernst, Jr., Dayton, Ohio, for AFI.

Jack Pickrel, Dayton, Ohio, for Creditors' Committee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon Motion to Dismiss filed on 19 August 1981 by American Fidelity Investments, hereinafter AFI. The Court held a hearing on 16 September 1981 to consider the Motion. The following decision is based upon the evidence adduced at the hearing, the parties' legal memoranda, and the record.

### FINDINGS OF FACT AND DISCUSSION OF THE ISSUES

Debtor was brought before this Court by an Involuntary Petition filed on 24 December 1980 by Imperial Management, Inc. under the signature of Frederic E. Gagel. Debtor's Schedules list two secured creditors, Metropolitan Life Insurance Company in the amount of $1,980,356.00 and AFI with a junior mortgage of $350,000.00. The Schedules also list seven unsecured creditors, as follows:

Imperial Management, Inc.—$41,806.00 for management fees commencing in January 1979;

Frederic E. Gagel—$113,000.00 at 10% interest for a personal loan made to Debtor;

AFI—$60,370.05 for a loan made in September 1980 for payment of Debtor's real estate taxes;

Dayton Power and Light Co.—$1,608.10 for delinquent utility bills commencing in November 1980;

Ohio Suburban Water Co.—$7,491.57 for delinquent bills commencing in September 1980;

IWD, Inc.—$1,652.28 for delinquent bills commencing in March 1980; and

Gagel, Gagel and Anderson—undetermined amount for "past partnership interest."

Debtor filed a consent to the bankruptcy proceedings on 27 April 1981, under the signature of "Frederic E. Gagel, Managing General Partner of GWF, Investment, Ltd."

Debtor was created as part of a complex partnership arrangement, diagrammed, in relevant part, as follows:

Debtor—Imperial Heights Apartments, Ltd., owned by three parties:

| GWF Investment, Ltd., a 99% general partner owned by two general partners: | Mr. Gagel, a .5% limited partner | W&F, Investment Co., (owned originally by two parties, but presently owned entirely by H. Garrett Frey, by transfer of the other party's interest on 30 January 1981), a .5% limited partner |
|---|---|---|
| Mr. Gagel W&F Investment Co., owned originally by two parties, but presently owned entirely by H. Garrett Frey, by transfer of the other party's interest on 30 January 1981 | | |

The linchpin of these arrangements is GWF Investment, Ltd. GWF Investment, Ltd. possesses a partnership or creditor interest in seven partnerships (including Debtor) each with a principal asset of an apartment complex, four of which, along with GWF

Investment, Ltd., are involved in proceedings in this Court.

AFI contends that the instant proceeding is a sham, bad faith filing. AFI contends that Debtor lacks legal existence and capacity, possesses no assets, and has no creditors. AFI contends that Debtor is therefore, by definition, unable to effectuate a Plan under 11 U.S.C. Chapter 11, and possesses no likelihood of rehabilitation as contemplated in the Bankruptcy Code.

The key controversy focuses on ownership of the apartment complex which Debtor alleges is its single asset. The interested parties in this matter first became involved in the apartment complex when Mr. Gagel purchased the property on 7 April 1972 for $1,662,901.62. Debtor alleges that at the time of Mr. Gagel's purchase the property was worth approximately two million dollars, and that Mr. Gagel paid a "bargain price" for the property. AFI, the Movant herein, became involved in the property on 16 October 1972, when Mr. Gagel and AFI entered into arrangements which, in form, involved a sale and leaseback of the property with an option to repurchase. This was accomplished by two instruments, both signed and dated 16 October 1972. First, Mr. Gagel and his wife signed a warranty deed, whereby Mr. Gagel "granted, bargained, sold and conveyed" the property to AFI subject to the secured interest of mortgagee-assignee Metropolitan Life Insurance Company in the original amount of $1,350,000.00. Mr. Gagel's transfer of the deed was in exchange for $350,000.00 which was "given" to Mr. Gagel from AFI through transactions not made a part of the record. Second, Mr. Gagel and AFI entered into an Indenture of Lease whereby Mr. Gagel leased the property back from AFI. The terms of the lease included graduated monthly rent payments equal to the monthly mortgage payment to the Metropolitan Insurance Company, plus an amount equal to interest, set at an increasing rate starting at 11%, computed on $350,000.00 of principal.

Debtor contends that the "sale-leaseback with option to repurchase" arrangement was, in fact, a disguised security interest. Debtor argues that the $350,000.00 "purchase price" was actually a loan secured by transfer of the deed to the property. Debtor argues that Mr. Gagel and AFI never intended an outright transfer of the property, but instead intended that title pass only for the period during which AFI's "loan" of $350,000.00 would otherwise be unsecured.

Debtor contends that the terms of the Indenture of Lease are indicative of Mr. Gagel's and AFI's actual intent. Specifically, Debtor emphasizes that, aside from the implicit fact of Mr. Gagel's continued possession, Mr. Gagel was responsible for all taxes, assessments, license fees, and utilities. Mr. Gagel was also responsible for repairs, maintenance, and improvements. In addition, the Indenture of Lease contained an "Option for Lessee (Mr. Gagel) to Repurchase" which, in essence, permitted Mr. Gagel to "repurchase" by reassumption of the mortgage held by the Metropolitan Life Insurance Company and repayment of the $350,000.00 "loan." Debtor contends that the "purchase price" set in the Indenture of Lease is nominal in relation to the value of the property, and that both Mr. Gagel and AFI "believed" that Mr. Gagel would "repurchase" the property as soon as Mr. Gagel had the financial capacity.

Debtor also contends that additional facts of record attest to Mr. Gagel's and AFI intention that the sale-leaseback arrangement was, in fact, the creation of a disguised mortgage. On the same day that the warranty deed and Indenture of Lease were entered into, AFI and Mr. Gagel executed a Guarantee Agreement, not made a part of the record, whereby Mr. Gagel affirmed his absolute and personal liability on the mortgage held by Metropolitan Life Insurance Company. The agreement provided that Mr. Gagel's liability could be accelerated in the event of default. Debtor argues that outright sales of property do not ordinarily include guarantees of this nature, and that the right of acceleration indicated that the parties viewed Mr. Gagel as primarily liable on the mortgage, a liability typically assumed by an owner of proper-

ty. Debtor also argues that under 26 U.S.C. § 856(a)(4) of the Internal Revenue Code, (which has since been amended), AFI, operating as a real estate investment trust, was "(forbidden) from holding properties for sale when the seller intended to repay the loan as soon as it became economically feasible," and that AFI's claim of ownership is counter to intent as inferred from the tax law as it existed when the sale-leaseback arrangement was entered into.

On the basis of the foregoing, Debtor contends that, despite the transfer of title to AFI in 1972, Mr. Gagel retained equitable title to the property. Debtor contends that as a court of equity, the Bankruptcy Court should declare AFI's deed to be a mortgage on the property, and that equitable title, having been retained by Mr. Gagel, should be found to be held by subsequent transferees of Mr. Gagel's interest.

Debtor then contends that Mr. Gagel's interest was made transferable by the vesting of the equitable title in the partnership of Gagel, Gagel and Anderson; in Debtor's own words, "Pursuant to (the) Guarantee Agreement, Imperial Heights Apartments became the property of a partnership known as Gagel, Gagel and Anderson." Debtor contends that equitable title is presently vested in Debtor by "sale" of the property by Gagel, Gagel and Anderson to GWF Investment, Ltd. on 9 March 1977, and successive "transfer" of the property by GWF Investment, Ltd. to Debtor. The Court notes that documentation of these transactions is not established by the record.

AFI disputes Debtor's allegation of ownership. AFI contends that Debtor has not documented the alleged transfer of the alleged equitable title by Mr. Gagel, or successive transfers of the alleged equitable title, in particular the transfer to Debtor. AFI contends, therefore, that resolution of the question of equitable title is not necessary for disposition of the case at bar. In the alternative, AFI contends that the sale-leaseback arrangement was *bona fide*, that AFI has owned the property outright since 16 October 1972, and that alleged transfer of Mr. Gagel's lease interest without written consent is specifically prohibited by terms of the Indenture of Lease, and that such consent was never given. Furthermore, AFI indicates that Mr. Gagel ratified the nontransferability of his leasehold interest by his execution on 27 August 1980 of a Cancellation and Termination of Lease, filed in the Montgomery County, Ohio Recorder's Office on 16 December 1980, whereby Mr. Gagel "surrender(ed) all rights in and to the Leased Premises and declare(d) that Lessor (AFI) shall be entitled to retake possession of the Leased Premises as of the date this document is filed for record."

In addition to the contention that Debtor possesses no assets, AFI posits that Debtor lacks legal existence or capacity because of failure to file a limited partnership agreement as required in O.R.C. § 1781.02(A)(2). Debtor responds that Debtor only discovered on or about 15 January 1981 that Debtor's attorney had not filed a certificate of partnership, and that AFI should be deemed estopped from questioning Debtor's equitable interest because of implicit assent through dealings with Debtor based upon prior awareness of Debtor's alleged interest in the apartment complex.

Complicating Debtor's position is that arguments were also made on Debtor's behalf under signature of counsel for H. Garrett Frey, a partner in Debtor, relevant to the instant proceedings, GWF Investment, Ltd., and W & F Investment Co. Mr. Frey argues that regardless of ownership interests, Mr. Gagel clearly possessed leasehold rights which were transferred to Debtor. Mr. Frey contends that AFI had knowledge of Debtor's "equitable interest in the leasehold rights to Imperial Heights Apartments," and that these rights should therefore not be "leveraged" away through the Cancellation and Termination of Lease which was executed subsequent to the vesting of Debtor's "equitable leasehold interests."

AFI, in response, argues that a number of facts indicate that, even if Mr. Gagel possesses leasehold interests, (an issue AFI argues is not before this Court), Mr. Gagel

himself never actually intended that Debtor obtain Mr. Gagel's interest. AFI notes that Mr. Gagel signed a Cancellation and Termination of Lease subsequent to the alleged transfer of Mr. Gagel's leasehold interests to Debtor. AFI also points out that, at the creditor's meeting, held pursuant to 11 U.S.C. § 341, Mr. Gagel testified that the apartment complex was property of GWF Investment, Ltd. AFI also notes that the tax return for GWF Investment, Ltd. lists the subject apartment complex as an asset of GWF Investment, Ltd. and that Debtor has never filed a tax return. The Court notes that the pertinent tax returns were not made a part of record.

Debtor responds that Debtor's taxes were "filed through" GWF Investment, Ltd., (for unexplained reasons, though the Court presumes for convenience in the filing for a parent and subsidiary partnership). By the way of rebuttal, Debtor also points out that Debtor maintained a separate bank account and paid its "own" debts.

The final point of controversy is whether Debtor is, in fact, indebted to the "creditors" listed in Debtor's Schedules. AFI contends that Debtor has no *bona fide* debt. AFI contends that, regardless of a finding of equitable title in Mr. Gagel, AFI itself is not a secured creditor of Debtor. AFI contends that determination of its listed unsecured and secured claims is not before the Court in the case at bar, and instead should be adjudicated in proceedings with Mr. Gagel, or perhaps a transferee partnership, directly. AFI argues that, in regard to the "single" secured creditor, nothing in record, beyond Debtor's bare allegation, documents that Debtor "assumed or agreed to pay" the mortgage held by the Metropolitan Life Insurance Company; and, instead, the record documents that AFI purchased the property subject to the mortgage, and that AFI, by the Cancellation and Termination Agreement, relieved Mr. Gagel of any liability on the mortgage. AFI contends that, in addition to itself, three other unsecured "creditors" have no debtor-creditor relationship with Debtor. AFI points out that Ohio Suburban Water and IWD, Inc. (Industrial Waste Disposal, Inc.) are creditors of Impe-

rial Management, Inc., and the Dayton Power and Light Company is a creditor of Mr. Gagel personally. AFI also notes that the remaining three creditors are not "independent," but are "Mr. Gagel, his management company Imperial Management, Inc., and a partnership that he was in known as Gagel, Gagel and Anderson." AFI contends that these scheduled "debts" are spurious and undocumented, and properly belong in other proceedings before this Court. Debtor responds that the Dayton Power and Light Company, Ohio Suburban Water Company, and Industrial Waste Disposal, Inc., have provided goods and services to Debtor solely for benefit of Debtor. Debtor further documents regular payments during the calendar 1980 year through Debtor's checking account, under the misnomer, "Imperial Heights, Ltd.," to AFI in the amount of the monthly rental payments required in the Indenture of Lease.

## DECISION AND ORDER

■ The Bankruptcy Court is a court of equity. 28 U.S.C. § 1481. As a court of equity, the Bankruptcy Court, in dealing with the adversities of *those who come before it*, has broad power to effectuate justice. The Court may carry out the substance of arrangements entered into by a debtor, regardless of form to the contrary. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Securities and Exchange Commission v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940). The Court may contrive necessary remedies, and apply equitable principles in the absence of Code directives. *Carrier Corp. v. J. E. Schecter Corp.*, 347 F.2d 153 (2d Cir. 1965); *In Re Evergreen Memorial Park Ass'n*, 308 F.2d 65 (3d Cir. 1962); *In Re Gunning*, 124 F.2d 7 (9th Cir. 1941); *In Re Romanac*, 245 F.Supp. 882 (W.D.Va.1965), *aff'd sub nom., National Bank & Trust Co. v. Allied Supply Co.*, 386 F.2d 225 (4th Cir. 1967). These powers are derivative of the Court's handling of cases which, almost by definition, involve insurmountable hardships, often inflicted by a culpable party who remains unscathed.

The implementation of equitable power, however, requires the utmost caution. Before a court acts to undo what parties have prima facie done, it must be sure that such action is demanded by the situation.

The instant matter involves the culmination of over a decade of legal maneuvers for payment and maintenance of various apartment complexes by a tangled conglomerate of partnerships. It is ironic that the matter is presented to the Court for determination of the very existence of one such partnership, its alleged creditors, and its alleged asset.

■ As a court of equity, it is indisputable that this Court possesses the power to deem a property deed to be an equitable mortgage. *National City Bank of Cleveland v. Euclid Doan Co.*, 104 F.2d 712, 715 (6th Cir. 1939). The factual circumstances underlying the title to the subject property indicate that the "badges" of an equitable mortgage are *prima facie* present—the "lessee's" option to repurchase is compelling; the "lessee" remained in possession and primarily liable on the mortgage; the "lessee" was contractually liable for repairs, maintenance, improvements, taxes, and assessments; and the lessee paid the equivalent of interest on what had been contractually termed as the "purchase price" for the property—all indicating likely intent that a debtor-creditor, rather than buyer/lessor-seller/lessee relationship exist. *National City Bank v. Euclid Doan Co., supra; Slutz v. Desenberg*, 28 Ohio St. 371 (1876); *Wilson v. Giddings*, 28 Ohio St. 554 (1876); *Patrick v. Littell*, 36 Ohio St. 79, 38 Am. Rep. 552, Aff'd 5 Ohio Dec.Rep. 379 (1880).

■ The threshold task before the Court, however, is not the determination of rights, be they legal or equitable, in the subject property or lease. The initial question before the Court is whether "cause" for dismissal of the instant Petition exists. 11 U.S.C. § 1112(b). If cause can be determined without disposition of the property rights of parties otherwise not a party in bankruptcy proceedings, then adjudication of the property rights should be declined as beyond the scope of instant judicial inquiry.

The question of "cause" hinges largely on factual determination based on the individual circumstances of each case; and

(11 U.S.C. § 1112(b)) gives wide discretion to the court to make an appropriate disposition of a case when a party in interest requests. . . . The list (of grounds for cause in subsection (b)) is not exhaustive. The court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 405. See also Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 117, U.S.Code Cong. & Admin.News 1978, p. 5787.

It is the finding of the Court that the facts of this case indicate that cause for dismissal of the instant Petition exists, and that adjudication of alleged property and leasehold interests, beyond the alleged ownership by the alleged Debtor, is unnecessary for this Court's determination of "cause." No documentation that a partnership agreement was ever entered into has been presented to the Court, O.R.C. § 1781.02(A). Further, it is conceded that a partnership, even if contemplated, was never activated by a certificate filing as required by state law. O.R.C. § 1781.02(B). The alleged successive transfers of the alleged equitable interests which comprise Debtor's scheduled asset are not substantiated by the record. Given the duplicity of partnerships and legal arrangements, the fact that some of the scheduled creditors may have dealt with Mr. Gagel under the name of Debtor is of little probative value in this Court's determination as to Debtor's existence. Likewise, the questions regarding tax filings are relevant only for determination of compliance with tax law not now in issue *instanter*. Although dismissal of the instant Petition leaves a number of questions unanswered, this proceeding is an inappropriate forum for their resolution.

In summary, Debtor does not own sufficient assets upon which to invoke the Chapter 11 jurisdiction. At best, the estate consists only of an alleged cause of action for a

lawsuit claiming a tenuous equity in an apartment complex. There is not even an insinuation that capital is available to fund a viable plan of reorganization, nor even to bear typical administrative expenses. Such absence of an economic entity reflects both upon "the reasonable likelihood of rehabilitation" and the "inability to effectuate a plan." If there is in reality any asset to administer, the wrong debtor is before the court and conversion to a case under Chapter 7 is not in the best interest of alleged creditors. 11 U.S.C. § 1112. The intent and purpose of Chapter 11 contemplates an existing estate subject to the formulation of a plan of reorganization, as a qualification of 11 U.S.C. § 541 incorporated therein. Lawsuits in the bankruptcy court under its general jurisdiction are only ancillary thereto.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Chapter 11 Reorganization Case is hereby DISMISSED.