In re Joan MORTON, Debtor.

Joan MORTON, Plaintiff–Appellant,

v.

NATIONAL BANK OF NEW YORK CITY, Defendant–Appellee.

No. 1434, Docket 88–5009.

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 1988.

Decided Jan. 24, 1989.

See also, Bkrtcy., 43 B.R. 215.

Julian Kaplan, Garden City, N.Y. (J. Stanley Shaw, Jeffrey M. Zalkin, Shaw, Licitra, Eisenberg, Esernio & Schwartz, Garden City, N.Y., of counsel), for plaintiff-appellant Joan Morton.

Richard L. Koral, Brooklyn, N.Y. (Rosenberg, Rosenberg & Koral, Brooklyn, N.Y., of counsel), for defendant-appellee Nat. Bank of New York City.

Before FEINBERG, Chief Judge, and CARDAMONE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

This appeal presents a question we first answered over fifty years ago, but which, because of our subsequent holdings and congress's amendment of the bankruptcy code, requires further attention today: Does a judgment lien, normally valid under New York law for a period of ten years, remain enforceable after expiration of the ten-year period when during that period the property subject to the lien becomes part of a bankrupt estate protected by the automatic stay imposed by 11 U.S.C. § 362(a)?

The bankruptcy and district courts, although adopting different rationales, held

that the judgment lien remained valid despite the expiration of the ten-year period fixed by state law. While agreeing, we write to emphasize the particular statutory provision that requires the result reached below. We hold that 11 U.S.C. § 108(c) tolls New York's ten-year period limiting judgment liens on real property until the automatic stay is terminated. Accordingly, we affirm.

## BACKGROUND

The debtor, Joan Morton, filed a petition for relief under Chapter 13 of the bankruptcy code on October 26, 1982. At that time, the National Bank of New York City ("the bank") held a judgment lien on Morton's residential property, docketed on December 10, 1975, in the amount of $216,-104.80. State law provides that a judgment lien on real property expires after ten years, see N.Y.Civ.Prac.L. & R. § 5203(a) (McKinney 1978), unless it is extended by the lienholder upon motion to a state court, with proper notice to the judgment debtor. Id. § 5203(b).

For purposes of this appeal the parties agree that the lien was valid both at the time Morton's bankruptcy petition was filed on October 26, 1982, and at the time her plan was confirmed on March 22, 1983. Apparently, because two prior mortgages and the bank's judgment lien made Morton's residential property fully encumbered, it was not considered to be an available asset when the bankruptcy court approved a plan to satisfy the claims of Morton's unsecured creditors—a plan which requires Morton to pay $125.00 per month "until further order" of the bankruptcy court. Significantly, moreover, the plan approved by the court made no specific provision for any payment to the bank against the debt owed by Morton; instead, it simply allowed the bank to "retain the lien securing [its] claim", presumably so that if Morton did not make payment the bank could eventually execute on her residential property pursuant to state law.

In late 1985—at or near the time the lien was due to expire under state law—the bank filed for extension of its judgment lien in New York State Supreme Court pursuant to § 5203(b). Thereafter, on February 25, 1986, that court issued an order extending the lien "for as long as plaintiff is stayed by defendant Joan Morton's filing of a petition in Bankruptcy, *plus* three months after the lifting of such stay". *Flushing National Bank v. Trident Construction Corp.*, No. 24949, Motion No. 15,076 (N.Y.Sup.Ct. February 25, 1986) (emphasis in original). The validity of this order is subject to dispute, however, because it is unclear whether Morton was given proper notice of the extension proceedings. *See* N.Y.Civ.Prac.L. & R. § 5203(b) (McKinney 1978) (before court may order extension, notice to the judgment debtor must be "served personally or by registered or certified mail").

On June 6, 1986, Morton moved in the bankruptcy court contending that the ten-year period applicable to judgment liens on real property had lapsed, and that the bank had failed to properly extend its lien pursuant to § 5203(b). Based on this alleged lapse, Morton asked the bankruptcy court for an order (1) avoiding the bank's judgment lien, (2) reclassifying the bank's claim as unsecured, and (3) amending the bankruptcy plan to include the previously encumbered property.

The bank opposed the motion on four separate grounds. First, the bank argued that the automatic stay—which came into effect on October 26, 1982—removed any obligation to extend the lien. Second, the bank asserted that, wholly apart from the automatic stay, the judgment lien remained enforceable simply because it was valid on the date Morton filed for bankruptcy, or alternatively, on the date her plan was confirmed. Third, the bank maintained that 11 U.S.C. § 108(c) automatically preserves a statutory lien until the automatic stay is lifted. Finally, the bank claimed that it had obtained a valid order in state court extending the lien pursuant to N.Y.Civ. Prac.L. & R. § 5203(b) (McKinney 1978).

On May 7, 1987, the bankruptcy court denied Morton's motion and held that the bank's judgment lien, as a valid secured claim, was not subject to reclassification.

In so doing, the bankruptcy court found it unnecessary to reach three of the bank's arguments; instead, the court focused on what it termed the "threshold issue"—whether the bank "had a duty to renew its lien" while the automatic stay was in effect. It held that "the automatic stay in bankruptcy preserved the validity of [the bank's] lien from the date of the debtor's petition" and that the bank had no "duty to renew its lien until the debtor obtains [a] discharge."

Morton appealed to the United States District Court for the Eastern District of New York, which affirmed the bankruptcy court's order and dismissed the appeal, albeit with a different emphasis. Determining that it was unnecessary to decide what effect the automatic stay has on the lifespan of a statutory lien, the court looked to the bank's second argument and held that "the critical time for determining the respective rights of a debtor and its creditors is the date of the filing of a petition in bankruptcy". Accordingly, the court concluded, if a lienholder's claim was valid "at the time of commencement of a bankruptcy proceeding"—as the bank's judgment lien was here—it is preserved without regard to whether at some later date it expired under state law.

This appeal followed.

### DISCUSSION

Morton claims that the bank's lien is void because it expired on December 10, 1985, ten years after it was docketed. In response, the bank offers the same four arguments it did below: (1) the automatic stay eliminated the state-law extension requirement; (2) the provisions of § 108(c) preserve the lien; (3) the lien remains valid because it was valid at the time Morton filed her petition and at the time her plan was confirmed; and (4) the bank obtained a valid extension from the state court.

1. *Does 11 U.S.C. § 362(a) Eliminate the State Requirement for Extension of the Statutory Lien?*

■ Citing *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir.

1940), the bank contends that the automatic stay provisions of 11 U.S.C. § 362(a) remove any requirement under state law to obtain an extension of its lien. Just as this section freezes any action to execute on or enforce a statutory lien during the pendency of the bankruptcy proceedings, the bank argues, so too does it freeze any requirement, under state law or otherwise, that a lienholder affirmatively extend its lien. Consequently, the bank contends, the ten-year clock on its judgment lien ceased to run when the automatic stay took effect on October 26, 1982, and that stay relieves the bank of any requirement to extend its lien while the bankruptcy proceeding remains pending. We disagree.

At the outset, we recognize the general rule which guides our inquiry in this area. Rather than establishing uniform laws applicable throughout the United States, congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). In light of this congressional policy choice, state property laws should be "suspended only to the extent of *actual conflict* with the system provided by the Bankruptcy Act of Congress." *Butner*, 440 U.S. at 54 n. 9, 99 S.Ct. at 918 n. 9 (emphasis added) (*quoting Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918)); *see also Ogden v. Saunders*, 25 U.S. (12 Wheat.) 213, 6 L.Ed. 606 (1827); *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819).

Absent such an actual conflict, there is no reason to analyze the lienholder's interests any differently than would otherwise occur if bankruptcy proceedings were not in progress. *Butner*, 440 U.S. at 55, 99 S.Ct. at 918. This is because a "[u]niform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (*quoting Lewis v. Manufacturers Nation-*

*al Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)).

Thus, succinctly stated, unless we can find an actual conflict between New York law and the policies advanced by § 362(a), we must direct the bankruptcy court to recognize New York's extension requirements in determining whether the bank possesses a valid judgment lien. In this case, we find no such conflict.

■ The automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a), operates only as a stay of "any act to *create, perfect,* or *enforce*" a lien against the property of the estate. 11 U.S.C. § 362(a)(4) (emphasis added). Significantly, the section does not explicitly prohibit acts to *extend, continue,* or *renew* otherwise valid statutory liens, nor is there any indication from the legislative history that congress intended such a result.

Similarly, there is no indication that the state requirements at issue here place any type of burden on § 362(a) or the interests it was designed to protect. Action by a lienholder under § 5203(b) does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors. To the contrary, extension under § 5203(b) simply allows the holder of a valid lien to maintain the status quo—a policy not adverse to bankruptcy law, but rather in complete harmony with it. *See Hunt v. Bankers Trust Co.,* 799 F.2d 1060 (5th Cir.1986); *In re Holtkamp,* 669 F.2d 505 (7th Cir.1982).

Of course, if New York law provided that the only way to preserve the lien was to execute on it within a given period of time, or if through extension the amount of the lien could be enlarged, or if somehow under § 5203(b) the priority of the lien could be enhanced, an actual conflict with § 362(a) might arise that would suspend the state law. 11 U.S.C. § 362(a)(1)-(5). *See, e.g., Isaacs v. Hobbs Tie & Timber Co.,* 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645 (1931); *In re Phillips Construction Co.,* 579 F.2d 431 (7th Cir.1978); *In re Lake County Fuel & Supply Co.,* 70 F.2d 391 (7th Cir.), *cert. denied,* 293 U.S. 577, 55 S.Ct. 90, 79 L.Ed.

674 (1934). Here however, we cannot find —nor has the bank suggested—any federal interest requiring, solely because of ongoing bankruptcy proceedings, that a lienholder be relieved of any requirement to give notice and extend its lien in state court, especially when the very existence of that lien is created and defined by state law and when the extension will have no adverse effect on any party or property involved in the bankruptcy proceeding. *See Butner,* 440 U.S. at 55, 99 S.Ct. at 918. Accordingly, we decline to, and indeed—in following *Butner's* express instruction that we apply state law except in cases of actual conflict—cannot, expand the provisions of § 362(a) this far.

Our past decisions fully support this interpretation. In fact, in *In re Willax,* 93 F.2d 293 (2d Cir.1937), we directly confronted this same question and reached an identical result. In *Willax* the New York statutory lien had a normal life-span of one year, but could be extended by court order. While the lien was still valid, the debtor filed a petition in bankruptcy and then, after the one-year period had run, filed a motion to avoid the lien. The lienholder objected, claiming that the automatic stay relieved it of any requirement to follow the state procedure for extending the lien. We expressly rejected this argument, noting that although "the bankruptcy court had jurisdiction over the property covered by the liens" and although it "could stay *enforcement* of the liens in any other court", it had no power "to recognize a lien which the lienor has failed to continue in the way prescribed by the state law." *Id.* at 294–95 (emphasis added). This was so, we explained, because statutory liens "are creatures of the law of the state where the real property is situated", and that law "governs the method whereby they may be continued as well as the mode of their creation." *Id.* at 295. Thus, we concluded, a bankruptcy court had no power to enjoin the extension of statutory liens; rather, its power under the automatic stay was "limited to enjoining '*enforcement*' of the liens." *Id.* (emphasis added).

The bank claims that we somehow implicitly overruled *Willax* three years later in *Lockhart v. Garden City Bank & Trust Co.*, 116 F.2d 658 (2d Cir.1940). In that case we held that creditors' liens generally remain valid and need not be renewed during the bankruptcy proceedings. However, as an express exception to this rule, we explicitly recognized "exceptional cases otherwise" including "statutory liens for employees, contractors, mechanics, landlords, and others." *Id.* at 661. When the state statute "expressly provides" that these liens must be extended within a certain time period, we concluded, the lien loses its validity as against the trustee if the lienholder fails to extend. *Id.*

Thus, at least as to statutory liens, *Lockhart* was in complete harmony with *Willax:* If the lien did not fall under the statutory "exceptional cases otherwise" category, or if no statute expressly required extension, no action on the part of the lienholder was necessary. *See Lockhart,* 116 F.2d at 661; *In re Chaseley's Foods, Inc.,* 726 F.2d 303 (7th Cir.1983). But if the lien fell under one of the above exceptions, then the lienholder had to take the action mandated by state law or lose its lien. *See In re Long Island Properties,* 143 F.2d 349, 351 (2d Cir.1944) (post-*Lockhart* case reaffirming *Willax* and holding that a lienholder was under obligation to renew statutory lien even if bankruptcy had intervened); *In re Romanac,* 245 F.Supp. 882, 885 (W.D. Va.1965) (*Willax* directly held that bankruptcy court "could not enjoin a state proceeding to continue the [statutory] lien as provided for by state law" because this extension "would not interfere with bankruptcy proceedings"), *aff'd,* 386 F.2d 225 (4th Cir.1967).

There is no question that the lien at issue in this case is statutory and that state law "expressly provides" that the lien expires after ten years if not extended. Accordingly, we hold that because this lien fits under the "exceptional cases otherwise" category of *Willax* and *Lockhart,* and because extension of the lien as authorized by state law would create no conflict with any provision of the bankruptcy code, § 362(a) by itself did not relieve the bank of the requirement to extend its lien before the initial ten-year period expired.

*A fortiori* we disagree with the bankruptcy court's implication that the bank's attempt to extend the lien in state court may have violated the automatic stay. The bank was free to make that application despite the automatic stay. But as we decide below, 11 U.S.C. § 108(c) makes such an application unnecessary for continuation of the lien until after the automatic stay is lifted.

### 2. *Does 11 U.S.C. § 108(c) Preserve the Lien?*

■ Having determined that *Willax* and *Lockhart* are not at odds with each other so far as statutory liens are concerned, and having recognized that a bankruptcy court has no power under § 362(a) to enjoin extension proceedings required by state law, we turn now to the question of whether congress, by enacting 11 U.S.C. § 108(c), acted to protect liens and other enforcement proceedings against the running of limitation periods during the time when the automatic stay is in effect. We hold that congress did so act, and that § 108(c) thus tolls New York's ten-year period until the automatic stay is terminated.

The predecessor to § 108(c), subdivision f of section 11 of the Chandler Act of 1938, provided that "any statute of limitations affecting the debts of the bankrupt * * * shall be suspended * * * from the date of the filing of the petition in bankruptcy". In our early decisions confronting the statutory lien issue, we presumably found this provision to be irrelevant because it applied only to state and federal "statute[s] of limitations"—periods which govern when one party can *commence* an action against another.

In 1978, however, congress significantly broadened the scope of this provision by enacting § 108(c), which deals not only with the commencement of actions, but also with their continuation:

> [I]f applicable nonbankruptcy law * * * fixes a period for commencing *or continuing* a civil action in a court other

than a bankruptcy court on a claim against the debtor * * * and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay * * * with respect to such claim.

11 U.S.C. § 108(c) (emphasis added). The bank argues that under this section the running of the ten-year expiration period governing the bank's judgment lien was suspended on October 26, 1982 while the lien was still less than seven years old, so that, under subsection (2) of § 108(c) the bank will have 30 days after the automatic stay is terminated to enforce its claim under the protection of the lien or to take steps to further extend the lien.

No other circuit court seems to have reached the question whether § 108(c) tolls the expiration of periods governing the life of statutory liens. Bankruptcy courts are split on the issue, some holding that § 108(c) tolls such periods, *see In re Victoria Grain Co.*, 45 B.R. 2 (D.Minn.1984); *In re Houts*, 23 B.R. 705 (W.D.Mo.1982); *In re Design Builders, Inc.*, 18 B.R. 392 (D.Idaho 1981), and others holding that the section does not apply. *See In re Hunters Run Limited Partnership*, 70 B.R. 297 (W.D.Wash.1987); *In re RDR Systems Development, Inc.*, 57 B.R. 540 (M.D.La. 1986).

Recognizing this confusion, we today hold that the tolling provisions of § 108(c) apply to New York's ten-year period governing judgment liens on real property. Consequently, because the bank held a valid lien on Morton's property at the time she commenced her bankruptcy proceeding, and because the limitation period governing that lien had not yet expired, the running of the period is tolled pursuant to § 108(c)(1), (2).

The basis for this holding is the specific language of the statute. "[A]pplicable nonbankruptcy law"—in this case N.Y.Civ. Prac.L. & R. § 5203—"fixes a period" of ten years wherein a judgment creditor with a lien on real property may execute on its judgment and retain its priority to proceeds therefrom. Such an execution is supplemental to the original action that gave rise to the judgment, *see Bank of United States v. Halstead*, 23 U.S. (10 Wheat.) 51, 63–64, 6 L.Ed. 264 (1825) ("[E]xecution is the fruit and end of the suit * * *. The suit does not terminate with the judgment; and all proceedings on the execution, are proceedings in the suit"); *Weir v. United States*, 339 F.2d 82, 84 (8th Cir.1964) (execution is "fruit and end of a lawsuit"), and is thus part of a "continuing" action against the debtor. Since the ten-year period concededly "ha[d] not expired before the date of the filing of the petition" when the automatic stay came into effect, the limitation "period does not expire until the later of (1) the end of such period * * *; or (2) 30 days after notice of the termination or expiration of the stay * * *." 11 U.S.C. § 108(c). *See In re Victoria Grain Co.*, 45 B.R. 2, 7 (D.Minn.1984); *In re Houts*, 23 B.R. 705, 707 (W.D.Mo.1982); *In re Design Builders, Inc.*, 18 B.R. 392 (D.Idaho 1981).

We note that this result is in full harmony with congress's purpose in enacting § 108(c). Recognizing that a petition in bankruptcy could sometimes give a debtor unfair advantage over a claimant by allowing the debtor to remain under the protection of the automatic stay until the limitation period governing the claimant's action had expired, *see Meyer v. Cunningham*, 196 Ark. 1097, 121 S.W.2d 90 (1938) (party's claim barred by the statute of limitations even though limitation period ran during time that automatic stay prohibited party from bringing the action); *American Woolen Co. v. Samuelson*, 226 N.Y. 61, 123 N.E. 154 (1919) (same) congress acted to solidly preserve the rights of a party "stayed from commencing or continuing an action against the debtor because of the bankruptcy case". S.R.Rep. No. 95–989, 95th Cong., 2d Sess. 30 (1978); H.R. No. 95–595, 95th Cong., 2d Sess. 318 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787. It did so by extending the period for "commencing or continuing a civil action"

against the debtor to, at a minimum, 30 days after termination or expiration of the automatic stay. 11 U.S.C. § 108(c).

The circumstances of this case provide an excellent example of the exact problem congress was seeking to remedy. In late 1982 the bank had a valid right to have Morton's property sold at an execution sale with a priority claim to the proceeds, and had bankruptcy not intervened, it could have exercised that right any time over the next three years. When Morton filed her bankruptcy petition, however, the bank was suddenly prohibited from executing on its judgment—a prohibition that will continue until the case is resolved, or until the automatic stay is otherwise lifted. To now hold that New York's period limiting the validity of the lien and the bank's right to priority continued to run while federal bankruptcy law prohibited the bank from executing on its judgment not only would create a substantial inequity, but also would give the debtor the power to eliminate certain secured claims simply by filing for bankruptcy at the appropriate time and then allowing the limitation period to run while it remained under the protection of the automatic stay. Exactly this type of inequity congress sought to remedy by enacting § 108(c), *see* 2 Collier on Bankruptcy ¶ 108.04 (L. King 15th ed.1988); we find no principled reason not to apply its clear provisions to this case.

## CONCLUSION

Because we find that 11 U.S.C. § 108(c) tolled New York's ten-year limitation period, we do not reach the bank's other arguments. The judgment of the district court is affirmed.