201 FOREST STREET, LLC, and 219
Forest Street, LLC, Debtors.

LBM Financial, LLC, Appellant,

v.

201 Forest Street, LLC, and 219 Forest
Street, LLC, Appellees.

BAP No. MW 09–023.
Bankruptcy Nos. 07–42296–
JBR, 07–41768–JBR.

United States Bankruptcy Appellate Panel
of the First Circuit.

Feb. 2, 2010.

Philip F. Coppinger, Esq., and Floyd H. Anderson, Esq., on brief for Appellant.

Harold B. Murphy, Esq., and D. Ethan Jeffery, Esq., on brief for Appellee, 201 Forest Street, LLC.

Before HAINES, VAUGHN, and TESTER, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Appellate Panel Judge.

This appeal involves the interplay of Bankruptcy Code §§ 108(c) and 362(b)(3) [1]

and the Massachusetts Obsolete Mortgages Statute.[2] On the motion of the chapter 11 debtor, 201 Forest Street LLC ("Forest Street" or the "debtor"), the bankruptcy court entered an order (the "Discharge Order") discharging a mortgage held by LBM Financial, LLC ("LBM") on the debtor's property. The bankruptcy court held that the mortgage was discharged by the passage of time and the operation of the Obsolete Mortgages Statute.

We **REVERSE,** concluding that LBM's right to enforce its mortgage was extended during the course of Forest Street's reorganization by § 108(c), notwithstanding state law. We hold this to be the case notwithstanding the possibility that LBM might have extended the length of time its mortgage remained viable by filing an affidavit in the appropriate Massachusetts registry of deeds, an avenue the bankruptcy court determined was available to LBM without relief from the automatic stay via § 362(b)(3).

### JURISDICTION

■■■ Before addressing the merits, we must determine our jurisdiction. *See Boylan v. George E. Bumpus, Jr. Constr. Co., Inc. (In re George E. Bumpus, Jr. Constr. Co., Inc.),* 226 B.R. 724, 725–26 (1st Cir. BAP (Mass.),1998). We have jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP (Mass.),1998). A decision is final if it "ends the litigation on the merits and

leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re Am. Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir. 1985)). The bankruptcy court's determination that the mortgage was discharged by operation of law is a final, appealable order. *See First Am. Title Ins. Co. v. Pifalo (In re Pifalo),* 379 B.R. 1, 4 (1st Cir.BAP (Mass.),2007).

### STANDARD OF REVIEW

■■■ We review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo. See T.I. Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir. 1994). To resolve the issues on appeal, we must interpret and apply the Massachusetts Obsolete Mortgages Statute, and §§ 108(c) and 362(b)(3). Such interpretations are legal questions subject to *de novo* review. *See Am. Express Bank, FSB v. Askenaizer (In re Plourde),* 418 B.R. 495, 499 (1st Cir.BAP (N.H.),2009).

### DISCUSSION

**I. The Pertinent Statutes**

**A. The Massachusetts Obsolete Mortgages Statute**

The Massachusetts Obsolete Mortgages Statute provides in relevant part:

---

**1.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Pro-

tection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. § 101, *et seq.*

**2.** Mass. Gen. Laws ch. 260, § 33 (2009), quoted in full *infra,* p. 891.

A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of ... in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.... Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property....

Mass. Gen. Laws ch. 260, § 33.

### B. Bankruptcy Code § 108(c)

Section 108(c) states:

[I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action[3] in a court other than a bankruptcy court on a claim against the debtor ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362 ... of this title ... with respect to such claim.

11 U.S.C. § 108(c).

### C. Bankruptcy Code § 362(b)(3)

According to § 362(b)(3):

The filing of a [bankruptcy] petition ... does not operate as a stay under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b)[4] ....

11 U.S.C. § 362(b)(3).

## II. Background

By instrument dated December 4, 2002, Forest Street granted LBM a mortgage, with a stated term of one year, on its real property. The mortgage was duly recorded within the month. On June 19, 2007, Forest Street filed a voluntary chapter 11 petition. On January 14, 2009, citing the Obsolete Mortgages Statute, it requested that LBM discharge its mortgage. Rather than execute a discharge, LBM filed an affidavit purporting to extend the term of the mortgage in the state registry.

Subsequently, Forest Street moved the bankruptcy court for an order discharging the LBM mortgage. In granting the motion, the bankruptcy court concluded that

---

**3.** There is no doubt that initiating a foreclosure proceeding constitutes commencement of a "civil action." *See, e.g.,* Mass. Gen. Laws ch. 212, § 3 ("The [Superior Court] shall have exclusive original jurisdiction of *civil actions for the foreclosure of mortgages* .... " (emphasis added)).

**4.** Section 546(b)(1)(B) provides:

> The rights and powers of a trustee [to avoid certain transactions] are subject to any generally applicable law that provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.
>
> 11 U.S.C. § 546(b)(1)(B).

LBM's extension affidavit was ineffective,[5] and held that, with the passage of five years since its maturity, LBM's mortgage had automatically been discharged by the Obsolete Mortgages Statute. In response to LBM's contention that § 108(c) preserved its rights as mortgagee, the court stated:

> [W]hile section 108(c) may extend the period of time to bring a foreclosure action ... LBM no longer has the right to foreclose because it failed to take action that it was not stayed from taking, not because [the debtor's] bankruptcy case prevented it from enforcing the Mortgage.

*In re 201 Forest Street, LLC,* 404 B.R. 6, 14–15 (Bankr.D.Mass.2009).

Thus, according to the bankruptcy court, LBM not only could have obtained an extension of the period during which to initiate a foreclosure proceeding without violating the automatic stay, but, since § 362(b)(3) *permitted* it to do so, LBM was *required* to do so. Therefore, because LBM did not obtain an extension, it no longer has the right to bring a foreclosure proceeding against the debtor. *See id.* at 15.[6]

## III. Analysis

■■■ We first consider the substance of the pertinent state law. "The obvious purpose and effect of the [Obsolete Mortgages] statute is to clear titles of old and obsolete mortgages, without the need of obtaining a discharge." *Town of Pembroke v. Gummerus,* No. 311622(GHP), 2008 WL 2726524, *9 (Mass.Land Ct. Jul.15, 2008); *see also* 2006 Mass. Adv.

Legis. Serv. 63 (Law.Co-op.) (synopsizing the bill containing the latest changes to the statute as "AN ACT PROVIDING REMEDIES TO CONSUMERS FOR CLEARING TITLE AFTER PAYOFF OF MORTGAGES."). "It is well to note that the relevant language in § 33 is essentially self-executing.... At the expiration of [the statutory] period, the mortgage is deemed discharged as a matter of law," if not extended in compliance with the statute. *Edmond v. Draymore,* No. 356439(HMG), 2009 WL 74148, *4 (Mass.Land Ct. Jan. 12, 2009) (holding that a timely-filed but faulty affidavit did not save a mortgage from expiration, even though a subsequent "Scrivener's Affidavit," filed after the expiration of the five-year term, purported to correct the faults).

■■■ All agree that the five-year period provided for in the statute was to expire on December 4, 2008, as a matter of state law, absent LBM's filing an appropriate extension affidavit. With Forest Street's bankruptcy petition having been filed before the five-year period's full run, the question becomes whether § 108(c) extends that five-year period within which LBM can commence a civil action to enforce its mortgage, such that the mortgage has not been discharged by operation of the state law.

■■■ The bankruptcy court's holding is premised on its view that LBM unilaterally could have filed an extension, acknowledgment or affidavit pursuant to the Obsolete Mortgages Statute to avoid statutory discharge of its mortgage without obtaining relief from stay pursuant to

---

**5.** LBM does not challenge that conclusion on appeal.

**6.** Another bankruptcy court within the District of Massachusetts addressed the same issue shortly after the case now before us. *See Shamus Holdings, LLC v. LBM Fin., LLC (In*

*re Shamus Holdings, LLC),* 409 B.R. 598 (Bankr.D.Mass.2009). That court relied on the *201 Forest Street* decision to reach the same conclusion, while adding additional analysis.

§ 362(b)(3)'s exception to the automatic stay. *See In re 201 Forest Street*, 404 B.R. at 14. The bankruptcy court considered that such action would constitute an act to

"maintain or continue the perfection" of its mortgage. *Id.* For today's purposes, we may assume, without deciding, that such is the case.[7] Even so, the bankruptcy court's

7. Though we need not address this issue in order to resolve today's appeal, whether the action required by the Obsolete Mortgages Statute to extend the enforcement term of a mortgage constitutes maintaining or continuing perfection is far from clear.

Perfection deals not with the conveyance of substantive rights between the parties to a security agreement, but the effectiveness of that security interest as against third parties. *See, e.g.*, 79 C.J.S. *Secured Transactions* § 48 (2009) ("[W]hile a security interest may be valid even though it is unperfected, perfection is necessary to prevent it from being subject to the rights of other creditors or transferees."). Legislative history indicates that it was the perfection of rights by secured creditors in relation to third parties pursuant to the Uniform Commercial Code, that § 362(b)(3) sought to protect:

The section sets forth an amendment to sections 362 and 546 of the Bankruptcy Code to confirm that certain actions taken during bankruptcy proceedings *pursuant to the Uniform Commercial Code to maintain a secured creditor's position* as it was at the commencement of the case do not violate the automatic stay. Such actions could include the filing of a continuation statement and the filing of a financing statement. The steps taken by a secured creditor to ensure continued perfection merely maintain the status quo and do not improve the position of the secured creditor.

H.R. Rep. 103–835, at 45 (1994) (emphasis added).

The Obsolete Mortgages Statute, on the other hand, deals explicitly with the substantive rights of a mortgagor against its mortgagee. *See* Mass. Gen. Laws ch. 260, § 33 ("[u]pon the expiration of the period provided herein, the mortgage shall be considered *discharged*" (emphasis added)). "Discharge" is defined as "payment of debt or satisfaction of some other obligation." *See* Black's Law Dictionary 475 (7th ed.1999). The effect of the Obsolete Mortgages Statute is to extinguish the mortgagee's rights as mortgagee—not simply to allow some third party to obtain a higher priority with respect to the collateral at issue. *In re WorldCom, Inc.*, 362 B.R. 96 (Bankr. S.D.N.Y.2007), sheds further light on this distinction. In that case, a Nebraska law required commencement of a foreclosure action to enforce a mechanic's lien within two years of filing the lien or else the lien would be void. *See id.* at 103 (citing Neb.Rev.Stat. § 52–140). The debtors in that case argued that "merely filing the Foreclosure Action is within the purview of section[ ] 362(b)(3) ... and constitutes an act 'to perfect, or to maintain or continue the perfection of, an interest in property....' " *Id.* at 105. The court held:

... [T]he Nebraska Statute is a statute of limitations and not an aspect of the perfection process under the Nebraska law. The Court finds that the Foreclosure Action is not an act to maintain or continue perfection of a lien. The purpose of the Foreclosure Action is to enforce a lien and is not related to perfection. "Except as provided in subsections (2) and (3) of this section, a lien that has become enforceable as provided in sections 52–125 to 52–159 continues enforceable for two years after recording of the lien." ...

... [A]s a result, the Foreclosure Action was subject to the automatic stay of section 362. During the pendency of the automatic stay of section 362, section 108(c) tolled the time for Waldinger to institute the foreclosure action. "Actions to perfect an interest in property are excepted by § 362(b)(3), while actions to enforce the lien are not." [*Concrete Structures, Inc. v. Tidewater Crane & Rigging Co. (In re Concrete Structures, Inc.)*, 261 B.R. 627, 641 (E.D.Va.2001)].

*Id.* at 108.

Like the Nebraska statute, the Obsolete Mortgages Statute appears to be "a statute of limitations and not an aspect of the perfection process." In addition to the discussion, *supra*, of substantive rights versus priority in relation to third parties, Mass. Gen. Laws ch. 260, § 33 appears within Part III, Title V of the Massachusetts General Laws, covering "Statutes of Frauds and Limitations," not Part II, Title I ("Title to Real Property"), which contains the requirements for perfection.

To be clear, though we note its uncertainties, the question whether § 362(b)(3) applies to permit an extension of the period within

rationale is wanting. It provides no explanation as to what would *compel* LBM to obtain a state law extension (on pain of seeing its mortgage discharged), rather than rely on the statute of limitations-staying provision provided by § 108(c).

■ The Massachusetts law provides mortgagees alternative ways to avoid the discharge of their mortgages by passage of time after maturity. They may *either* commence a civil action (or take other state-recognized steps to initiate foreclosure) *or* they may file papers to extend the mortgage's viability beyond the five-year term. We can discern nothing in the Bankruptcy Code that compels an election, and Forest Street has pointed to none.[8]

The reasoning of two cases distinguished by the bankruptcy court, *Spirtos* and *Morton,* is persuasive. *See In re 201 Forest Street,* 404 B.R. at 14 (citing *Spirtos v. Moreno (In re Spirtos),* 221 F.3d 1079, 1080 (9th Cir.2000); *Morton v. Nat'l Bank of N.Y.C. (In re Morton),* 866 F.2d 561 (2d Cir.1989)).

*Spirtos* featured a claims objection based on the contention that the judgment underlying the claim was void under California's statute of duration.[9] *See* 221 F.3d at 1080. The relevant statute provided that a judgment was unenforceable after ten years unless properly renewed. *Id.* (citing Cal.Civ.Proc.Code §§ 683.020 and 683.100). The ten-year period ended while the debtor was in bankruptcy. *Id.* The Ninth Circuit determined that "the creditor's inability to *enforce* the judgment for a portion of the ten-year period ... keeps the period of duration open under section 108(c)." *Id.* at 1081 (emphasis added).

*Morton* dealt with a creditor's judgment lien. *See* 866 F.2d 561. In that case, New York law provided that a judgment lien would expire after ten years, unless extended by motion in the state court. *Id.* at 562 (citing N.Y. C.P.L.R. § 5203(a)). Again, the ten-year period expired while the debtor was in bankruptcy, and the debtor sought to avoid the allegedly-expired lien. *Id.* The Second Circuit upheld the validity of the lien, concluding that:

> In late 1982 the *bank had a valid right to have Morton's property sold at an execution sale with a priority claim to the proceeds, and had bankruptcy not intervened, it could have exercised that right any time over the next three years.* When Morton filed her bankruptcy petition, however, the bank was suddenly prohibited from *executing on its judgment*-a prohibition that will continue until the case is resolved, or until the automatic stay is otherwise lifted. To now hold that New York's period limiting the validity of the lien and the bank's right to priority continued to run while federal bankruptcy law prohibited the bank from executing on its judgment not only would create a substantial inequity, but also would give the debtor the power to eliminate certain secured claims simply by filing for bankruptcy at the appropriate time and then allowing the

---

which a mortgage may be enforced under the Obsolete Mortgages Statute need not be resolved to determine this appeal.

8. For this reason, we think it irrelevant that LBM attempted to file an affidavit extending the enforcement period. Even if the filing of an affidavit would have constituted an effort to maintain perfection, *but see* note 7, *supra,* nothing in the Bankruptcy Code mandates that a failed attempt to extend the enforce-

ment period somehow revokes the availability of § 108(c). *Contra In re Shamus Holdings,* 409 B.R. at 602 n. 1, 609–10.

9. The bankruptcy court characterized *Spirtos* as dealing with a judgment "lien," but how far the creditor had proceeded to enforce, or secure, its judgment is not apparent. *See* 221 F.3d at 1080.

limitation period to run while it remained under the protection of the automatic stay....

*Id.* at 567 (emphasis added).[10]

The bankruptcy court distinguished these cases because efforts to extend the relevant time periods constituted " 'continuations' of 'civil action[s]' within the meaning of section 108(c)" in those cases, while the filing of "an extension, acknowledgment, or affidavit under the Obsolete Mortgages Statute is not the continuation of a civil action." *In re 201 Forest Street*, 404 B.R. at 14.[11] The observation, though correct, misses the point. The question is not whether the creditor was prevented from taking action to *extend* the relevant enforcement period regarding its lien, but rather whether the creditor was prohibited from taking action to *enforce* its rights. *Spirtos* and *Morton* both framed the question in the latter way, and determined that because the creditors could not *enforce*

their rights, § 108(c) applied to extend the life of those rights. *See In re Spirtos*, 221 F.3d at 1081; *In re Morton*, 866 F.2d at 564–66. Section 108(c) applies here because LBM was prohibited by the automatic stay from initiating a civil foreclosure action.[12] That another alternative to preserve LBM's mortgage *may* have been available matters not; its option to initiate suit was stayed by Forest Street's bankruptcy.

We hold that LBM's right to commence a civil action in enforcement of the mortgage remains viable until 30 days after the termination or expiration of the automatic stay, pursuant to § 108(c).[13]

## CONCLUSION

Because the debtor's bankruptcy filing prevented LBM from enforcing its rights by commencing a civil action to foreclose its mortgage, we hold that § 108(c) operates to extend the time within which LBM

---

**10.** The bankruptcy court also distinguished *Miner Corp. v. Hunters Run Ltd. P'ship (In re Hunters Run Ltd. P'ship)*, 875 F.2d 1425 (9th Cir.1989). The Washington statute at issue in *Hunters* Run required that a foreclosure proceeding be brought within eight months of recording (and thus perfecting) a mechanic's lien or else the lien would no longer "bind" the relevant property. *See id.* at 1426 n. 2 (citing Wash. Rev.Code § 60.04.100). The Ninth Circuit held:

Commencement of foreclosure proceedings under [the relevant Washington statute] is not an element of "perfection" exempted from section 362's stay by section 546(b); rather, it is "enforcement" which remains stayed by section 362. Consequently, section 108(c) applies to toll the enforcement period of [the Washington statute].

*Id.* at 1428. There was no relevant extension provision in *Hunters Run*.

**11.** The *Shamus* court distinguished these cases on account "of the provisions of the applicable state laws ... which require the filing of pleadings in state court with notice to the judgment debtor" in order to *extend* the

life of the relevant rights. *See* 409 B.R. at 606. As discussed, infra, we think this focuses on the wrong prohibition—that of extension rather than enforcement.

**12.** The Second and Ninth Circuits both held that the period within which the creditors could *extend* the terms of their rights was prolonged by § 108(c). *See In re Spirtos*, 221 F.3d at 1081–82; *In re Morton*, 866 F.2d at 566. Though our decision today need not reach that far, *see infra* note 13, the reasoning of those courts regarding the enforcement of liens and § 108(c) supports our holding. *See In re Spirtos*, 221 F.3d at 1081 ("[w]hether the automatic stay also precluded the creditor from renewing the judgment-an issue we need not decide-is beside the point."); *In re Morton*, 866 F.2d at 564–66 (holding that creditor was not barred by the automatic stay from extending the term of its lien, but that § 108(c) applied anyway).

**13.** LBM has not asked us to decide whether § 108(c) also extends the time within which it might obtain a five-year extension of rights under its mortgage. Consequently, we express no opinion on the matter.

can initiate such an action until "30 days after notice of the termination or expiration of the stay...." We, therefore, **REVERSE** the Discharge Order.