# United States Court of Appeals
## For the First Circuit

No. 10-2216

IN RE SHAMUS HOLDINGS, LLC,

Debtor.

_____

SHAMUS HOLDINGS, LLC,

Appellant,

v.

LBM FINANCIAL, LLC,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Howard, Selya and Thompson,
Circuit Judges.

Charles A. Dale III, with whom Mackenzie L. Shea and K&L Gates
LLP were on brief, for appellant.
Philip F. Coppinger for appellee.

June 9, 2011

**SELYA**, **Circuit Judge**. This bankruptcy appeal stands at the intersection of state and federal law. The issue presented concerns the interplay between a state statute placing temporal limitations on the enforcement of stale mortgages and the automatic stay provisions of the Bankruptcy Code. The bankruptcy court ruled that the mortgagee's unqualified right to extend the limitations period by performing an essentially ministerial act (recording of an extension) rendered the tolling provision associated with the automatic stay inapposite and the mortgage obsolete. Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC), 409 B.R. 598, 606 (Bankr. D. Mass. 2009). At the first level of appellate review, the district court saw the matter quite differently; it ruled that the mortgage remained in force for the duration of the automatic stay. LBM Fin. LLC v. Shamus Holdings, Inc., No. 1:09-cv-11668, 2010 WL 4181137, at *2 (D. Mass. Sept. 28, 2010). After careful consideration, we affirm the district court's decision.

The relevant facts are not now in dispute. The encumbered property is a condominium unit in Boston, Massachusetts. On May 9, 2003, the owner, Foundry Realty, LLC, executed and delivered a second mortgage to the appellee, LBM Financial, LLC. The mortgage, which secured the due performance of a guaranty, had a stated term of four months.

Foundry subsequently granted a separate mortgage on the property to Pine Banks Nominee Trust (PBNT). Matters did not go well, and Foundry foundered; it defaulted on the obligations underlying this separate mortgage. PBNT foreclosed, took possession of the mortgaged property, and transferred it to Steven Ross, as trustee of Beach Street Realty Trust. The transfer was, of course, subject to LBM's senior mortgage.

In 2007, LBM — the guaranty underlying its mortgage still unsatisfied — noticed a public foreclosure sale of the property. A few days before the date of the scheduled sale, Ross incorporated the appellant, Shamus Holdings, LLC, and conveyed the property to Shamus for nominal consideration. Shamus wasted no time in filing a voluntary Chapter 11 petition, see 11 U.S.C. § 301, on July 25, 2007. This filing triggered the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a), and halted the anticipated foreclosure sale.

This brings us to the Obsolete Mortgages Statute, Mass. Gen. Laws ch. 260, § 33. The statute requires the holder of a mortgage, on pain of forfeiture, to take action to enforce it within five years after the end of the mortgage's stated term. Here, the statute required LBM to take action to enforce its mortgage by September 9, 2008. This deadline had not arrived when Shamus instituted the bankruptcy proceeding.

Under ordinary circumstances, the Bankruptcy Code tolls the running of the limitations period from the filing date until

the automatic stay is either lifted or dissolved. See 11 U.S.C. §
108(c). In Shamus's view, however, the Obsolete Mortgages Statute
alters this calculus by allowing a mortgagee to extend the
limitations period through the simple expedient of recording a
notice of extension. Shamus theorizes that LBM's failure to avail
itself of this procedure within the five-year period removes this
case from the mine run and converts the automatic stay into a dead
letter.

Marching under this banner, Shamus initiated an adversary
proceeding in the bankruptcy court, seeking to discharge the
mortgage as time-barred. The bankruptcy court bought into the
theory and held that LBM's failure to record an extension and its
attendant delay in enforcing its rights rendered the mortgage null
and void. In re Shamus Holdings, 409 B.R. at 606. LBM appealed to
the district court, see 28 U.S.C. § 158(a)(1), which rejected
Shamus's theory and reversed the bankruptcy court's decision. LBM
Fin., 2010 WL 4181137, at *1. The court reasoned that, regardless
of LBM's ability to extend the duration of the mortgage enforcement
period, the automatic stay preserved its rights. Id. at *4. This
further appeal ensued.

The standard of review is familiar. "We cede no special
deference to the district court's initial review of the bankruptcy
court's decision," focusing instead on the bankruptcy court's
decision. HSBC Bank USA v. Branch (In re Bank of New Engl. Corp.),

-4-

364 F.3d 355, 361 (1st Cir. 2004). We review its findings of fact for clear error and its conclusions of law de novo. <u>Brandt</u> v. <u>Repco Printers & Lithog., Inc.</u> (<u>In re Healthco Int'l, Inc.</u>), 132 F.3d 104, 107 (1st Cir. 1997). This case turns on a question of law: whether the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), and its concomitant tolling provision, <u>id.</u> § 108(c), combine to preserve LBM's right to enforce the mortgage notwithstanding LBM's eschewal of a readily available extension provided by the Obsolete Mortgages Statute. Answering this question requires an understanding of the interplay between various state and federal statutes.

The principles that guide this inquiry are well settled. Statutory interpretation starts — and often ends — with the text of the statute. <u>Ruiz</u> v. <u>Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 8 (1st Cir. 2007); <u>Sullivan</u> v. <u>Town of Brookline</u>, 758 N.E.2d 110, 115 (Mass. 2001). Unless specially defined, the legislature's words are generally deemed to carry their plain and ordinary meaning. <u>Boivin</u> v. <u>Black</u>, 225 F.3d 36, 40 (1st Cir. 2000); <u>Cohen</u> v. <u>Comm'r of Div. of Med. Assist.</u>, 668 N.E.2d 769, 774 (Mass. 1996). When that meaning produces a plausible result, the inquiry typically ends. <u>Plumley</u> v. <u>S. Container, Inc.</u>, 303 F.3d 364, 369 (1st Cir. 2002); <u>Cohen</u>, 668 N.E.2d at 774. Even so, plain meaning is not invariably the be all and end all of statutory construction. If a plain-meaning interpretation produces outcomes "that are

either absurd or antithetical to [the legislature's] discernible intent," an inquiring court must continue its search. <u>Stornawaye Fin. Corp.</u> v. <u>Hill</u> (<u>In re Hill</u>), 562 F.3d 29, 32 (1st Cir. 2009); <u>accord</u> <u>Sullivan</u>, 758 N.E.2d at 115.

Against this backdrop, we turn to the Obsolete Mortgages Statute. It provides in pertinent part:

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of . . . , in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.

Mass. Gen. Laws ch. 260, § 33. The Massachusetts legislature designed this law to streamline conveyancing and make it easier to clear titles blemished by outdated mortgages. <u>See</u> <u>Town of Pembroke</u> v. <u>Gummerus</u>, No. 311622, 2008 WL 2726524, at *9 (Mass. Land Ct. July 15, 2008).

Here, however, the Obsolete Mortgages Statute does not operate in a vacuum. Shamus's bankruptcy petition triggered the automatic stay, 11 U.S.C. § 362(a), which "gives debtors breathing room by stopping collection efforts in their tracks and permitting their resumption only when the stay is lifted by the bankruptcy court or dissolved by operation of law." <u>229 Main St. Ltd. P'ship</u> v. <u>Mass. Dep't of Envtl. Prot.</u> (<u>In re 229 Main St. Ltd. P'ship</u>),

262 F.3d 1, 3 (1st Cir. 2001).  The automatic stay prevents "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor."  11 U.S.C. § 362(a)(1).

Another statute within the Bankruptcy Code is implicated here.  That statute, 11 U.S.C. § 108(c), is a tolling provision; it extends state statutes of limitations for creditors who are barred by the automatic stay from taking timely action against the debtor.  See Young v. United States (In re Young), 233 F.3d 56, 59 n.3 (1st Cir. 2000).  It provides in pertinent part:

> [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of —
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim.

11 U.S.C. § 108(c).

Our task is to synthesize this mix of state and federal laws in order to determine whether, on the facts at hand, LBM's mortgage remains in force despite LBM's failure to record the extension permitted under the Obsolete Mortgages Statute.

We begin with the obvious: the Obsolete Mortgages Statute is nonbankruptcy law that applies to LBM's mortgage.  It is equally

-7-

as obvious that LBM neither commenced a judicial enforcement action nor recorded an extension of the mortgage by the fifth anniversary of the expiration of the mortgage term (September 9, 2008). Based on these facts, Shamus strives to convince us that section 108(c) is inapposite because, in light of the availability of an extension, it cannot be said that the Obsolete Mortgages Statute "fixes a period for commencing or continuing a civil action" by a creditor against a debtor. We are not persuaded.

Shamus's thesis overlooks that, under Massachusetts mortgage law, a mortgagee has a choice of remedies. When the mortgagor defaults, Massachusetts law gives the mortgagee two general options: it may either enforce the mortgage within the period provided by law or extend the duration of the enforcement period by recording an extension. This choice is the mortgagee's — and the mortgagee's alone.

Where, as here, the mortgagee chooses the former option, that option may be administered through either judicial or nonjudicial means. See Mass. Gen. Laws ch. 244, §§ 1-14. Once again, the choice is the mortgagee's — and the mortgagee's alone.

Here, the bankruptcy occurred before the expiration of the limitations period and, at that time, LBM had the right to pursue judicial foreclosure. Id. § 1. Its ability to exercise that right was frustrated by the automatic stay. That stay prevented LBM, then and thereafter, from exercising its right to

foreclose by commencement of a court action within the limitations period fixed by the Obsolete Mortgages Statute. See Perry v. Blum, 629 F.3d 1, 6 (1st Cir. 2010) (explaining that the automatic stay must be lifted to allow foreclosure to proceed).

The bottom line is that this case falls squarely within the maw of 11 U.S.C. § 108(c). That tolling provision preserves LBM's option to commence a judicial foreclosure action until after the lifting of the automatic stay. See Spirtos v. Moreno (In re Spirtos), 221 F.3d 1079, 1080-81 (9th Cir. 2000); Morton v. Nat'l Bank of N.Y.C. (In re Morton), 866 F.2d 561, 565-66 (2d Cir. 1989); LBM Fin., LLC v. 201 Forest St., LLC (In re 201 Forest St., LLC), 422 B.R. 888, 895 (B.A.P. 1st Cir. 2010).

In an effort to blunt the force of this reasoning, Shamus insists that, because both the Bankruptcy Code and state law permitted LBM to file an extension of the limitations period as of right, it cannot invoke the automatic stay. The extension procedure, Shamus says, fits into the exception to the automatic stay for acts "to perfect, or to maintain or continue the perfection of, an interest in property." 11 U.S.C. § 362(b)(3).

We need not dwell upon the applicability vel non of this exception; whether or not it covers the filing of an extension is beside the point.[1] The choice of which route to take to protect

---

[1] For the sake of completeness, we note that it is unclear whether section 362(b)(3) does, in fact, apply. See In re 201 Forest St., 422 B.R. at 893 & n.7. Given our conclusion that the

its rights was, as we have said, up to the mortgagee (LBM). Neither the case law nor the language of section 362(b)(3) itself suggests that the action it contemplates is mandatory rather than permissive. It clearly is not. See Toranto v. Dzikowski, 380 B.R. 96, 100 (S.D. Fla. 2007).

Lacking any relevant authority for the proposition that the ready availability of an extension trumps the automatic stay, Shamus falls back on the Obsolete Mortgages Statute itself. Shamus argues that the statute requires a mortgagee to record an extension even when the mortgagee has commenced a timely enforcement proceeding but has not concluded it within the five-year period. This is sheer persiflage. The statute identifies the commencement of foreclosure proceedings, not their completion, as the action that must be taken within the limitations period to avoid nullification of the mortgage. See Mass. Gen. Laws ch. 260, § 33 ("A power of sale in any mortgage of real estate shall not be exercised . . . nor possession taken nor proceeding begun for foreclosure . . . .").

To recapitulate, LBM was not under any legal compulsion to choose the option of obtaining an extension but, rather, was free to choose the option of judicial foreclosure. See Mass. Gen. Laws ch. 244, § 1; see also In re Morton, 866 F.2d at 567. The

statute is permissive, see text infra, we need not probe this point more deeply.

-10-

exercise of the latter option was temporarily blocked by the operation of the automatic stay. That LBM may have been able to extend the limitations period by the performance of a ministerial act unhindered by the automatic stay is immaterial. See In re Spirtos, 221 F.3d at 1081. Thus, as the district court correctly held, section 108(c) extends the time within which LBM could act to enforce the mortgage.

There is one loose end. Shamus contends that the Obsolete Mortgages Statute must control, regardless of the automatic stay, because rights in real property devolve from, and are defined by, state law. This contention misconceives the role of state law in federal bankruptcy proceedings.

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." Raleigh v. Ill. Dep't of Rev., 530 U.S. 15, 20 (2000). Consequently, when federal bankruptcy law supplies a rule that speaks directly to the right at issue, that rule controls. See Jafari v. Wynn Las Vegas, LLC (In re Jafari), 569 F.3d 644, 648 (7th Cir. 2009). So it is here: while Massachusetts law defines the parties' rights and obligations under the mortgage (including the duration of the limitations period), section 108(c) of the Bankruptcy Code speaks directly to the enlargement of state

limitations periods.  See Jinks v. Richland Cnty., 538 U.S. 456, 461 & n.1 (2003).  Accordingly, section 108(c) controls here.

We need go no further.  We hold that 11 U.S.C. § 108(c) tolls the limitations period set by the Massachusetts Obsolete Mortgages Statute, thereby enlarging the time within which LBM can bring a judicial foreclosure action until after the termination or expiration of the automatic stay.[2]  It follows inexorably that the district court did not err in ruling that LBM's mortgage remains in force.

**Affirmed**.

---

[2] We take no view as to how long LBM will have, after the lifting of the automatic stay, to commence a judicial enforcement action.  Compare 11 U.S.C. § 108(c) (extending creditor's right to enforce until "30 days after notice" of expiration of automatic stay unless limitations period itself is longer), with In re Morton, 866 F.2d at 566 (holding that section 108(c) also extends time within which creditor may renew limitations period).